[Civ. No. 17708.   Second Dist., Div. One.   Mar. 5, 1951.]

ALBERT ERVAN HARMAN et al., Appellants, v. JAMES J. WALSH et al., Respondents.

Martin P. Deming and Henry W. Cutter for Appellants.

W. Roger Revelle, Wellborn, Barrett & Rodi, Karl B. Rodi and Owen F. Goodman for Respondents.

DORAN, J.—The action herein was instituted by the plaintiffs as purchasers under a contract for the sale of real estate, furniture and furnishings.   Claiming an unlawful forfeiture by defendant sellers, the complaint seeks specific performance and damages.   The defendants filed a cross-

complaint to quiet title. Judgment was rendered in favor of defendants upon findings that the plaintiffs were in default in making payments, that such default had not been waived, that notice of forfeiture had been given. The trial court concluded that under the contract terms the defendants were entitled to retain as liquidated damages all sums paid by plaintiffs, and that plaintiffs had no right, title or interest in the property.

A written "Agreement for Sale of Real Estate" was executed by the parties on August 3, 1945, under which respondents agreed to sell the property to appellants for a price of $7,505. Appellants made a down payment of $100, and agreed to make monthly payments of "$100.00 or more dollars, per month on the 1st day of September, 1945, and the first day of each succeeding month thereafter, until such time as the principal has been reduced the amount of . . . $1,605.00." When such reduction in the amount due had been achieved, it was agreed that the property should be placed in escrow for the execution of a deed to plaintiffs and a trust deed back to defendants, the payments thereafter to be $50 or more per month. The sale had been effected through a broker whose commission of $395 appellants had agreed to pay. Upon execution of the agreement, appellants went into immediate possession of the property.

The agreement provides: "IT IS UNDERSTOOD AND AGREED, that time is of the essence of this contract and should the buyer fail to comply with the terms hereof, then the Seller may at his option be released from all obligations in law and in equity to convey said property, and the buyer shall thereupon forfeit all right thereto and to all moneys theretofore paid under this contract as liquidated damages."

The record discloses evidence that no payment was made in February, 1946, and upon request for this payment the Harmans claimed that no payment was due in February for the reason that in prior months excess payments of more than $100 had been made. This interpretation was protested by the sellers, and in March, 1946, payment of $200 was made by the buyers. In April, May, June, July and August, 1946, the specified payments of $100 were duly made on the first days of those months. On September 1, 1946, two checks were presented by appellants, one of appellant Violet Harman for $49.27 which was dishonored at the bank, and another check of Harry R. Kelly, for $50.73 which was duly paid.

Mr. Kelly was a brother of Mrs. Harman who occupied the property and paid rent to the Harmans of $50 per month. No further sum was ever paid to respondents in satisfaction of the September payment.

On September 15, 1946, respondents' attorney notified appellants in writing of the September default and that the latter's rights would be forfeited unless the default was cured by October 1, 1946. On October 1, 1946, on account of the October installment, Mr. Kelly, by check, made a $50 payment. No further payments were made by any person, and on October 14, 1946, respondents gave written notice of forfeiture to the appellants.

It is appellants' contention that the written contract of sale is ambiguous as to the amount of payments due each month; that ''The construction . . . adopted by the parties and as understood by the plaintiffs was that if total payments of the contract equalled One Hundred ($100.00) Dollars per month, the plaintiffs had fully complied with the payment terms of the contract.'' Since the contract is ambiguous, say appellants, it should be construed in favor of appellants.

It is further insisted by appellants that by the acceptance of the $50 payment on October 1, 1946, defendants waived the right of forfeiture, and that a new notice of forfeiture was then necessary. Appellants also claim to be entitled to relief under section 3275 of the Civil Code providing that ''Whenever, by the terms of an obligation, a party thereto incurs a forfeiture . . . by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, wilful, or fraudulent breach of duty.'' Appellants denominate the default as ''merely technical,'' and aver that considering all payments made since inception of the contract, the total amounts to $22 more than the required monthly payments. It is therefore declared that ''the equities are all strongly in favor of the Plaintiffs.''

It is likewise contended that ''Defendants, by their conduct, repudiated the contract, thus excusing further tender or offer of performance by the plaintiffs,'' and that ''Plaintiffs were and now are ready, willing and able to perform the terms and conditions of the contract.''

The appellants' contentions are without merit, and the record discloses no reversible error. As pointed out in respondents' brief, the agreement of sale is clear and un-

ambiguous; it means exactly what it says. By express terms the contract obligates the buyers to pay "$100.00 or more Dollars per month on the 1st day of September, 1945, and the first day of each succeeding month thereafter." Nowhere in the instrument is there any suggestion that in the event appellants should pay more than $100 in one month, later monthly payments should be reduced by the excess. Appellants' only privilege was to pay "more" than the stipulated sum on the first of any month; no privilege to pay "less" than $100 in any one month is granted. To read such a provision into an explicit written contract would amount to imposing upon the sellers additional terms not mentioned in the written instrument and in effect would negative the provision that "time is of the essence of this contract."

The record discloses evidence to support the finding that there was no intention to waive the above provisions or that the parties adopted any other interpretation. Indeed, after default in the February payment appellants, claiming that no payment was due because of previous excess payments, appear to have made up the deficit by paying $200 in March. For the next five months thereafter, hundred dollar payments were duly made by appellants on the first of each month until the defaults of September and October.

Appellants' briefs contain many references to the principles of equitable relief, and aver that great injustice will result if specific performance of the agreement of sale be not ordered. In this connection appellants allege willingness and ability to perform, and that "they have in good faith fully performed," at least substantially. It is well to bear in mind, however, that equity is concerned with the rights of both buyer and seller.

Here appellants went into immediate possession of the property upon a small payment of $100 and a promise to make regular monthly payments of a like amount. The sellers under this written contract had a right to expect such payments to be made as therein specified. Under the interpretation sought by appellants, however, respondents would be obliged to accept almost any payment tendered, on the assumption that sooner or later appellants would make up the deficit, an arrangement entirely different from that specified in the written instrument. The principles of equity, important as they are, do not comprehend such an impairment of contract obligation.

The trial court had before it various conflicting contentions and evidence relating thereto. It cannot be said that the findings and judgment adverse to appellants' contentions are either unsupported by substantial evidence or contrary to law.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.