[Civ. No. 15660. First Dist., Div. One. Jan. 18, 1954.]

CRAIG P. SMITH et al., Respondents, v. MAE V. RENZ, as
Administratrix, etc., Appellant.

Young, Rabinowitz & Chouteau and Walter Chouteau for Appellant.

Hancock, Elkington & Rothert for Respondents.

FINLEY, J. pro tem.*—This action in declaratory relief concerns the application of a substantial advance payment of principal made on a promissory installment note nearly five years before any of the installments became due. The question of interest is not involved. The point to be decided is how this advance payment is to be applied on the principal amount. Appellant contends that it should be applied to the last installments which would otherwise have fallen due under the note, and not to the first installments, or, if this position is untenable, then application cannot extend beyond the first installment, leaving all those following to come due according to schedule and amount until the principal sum is paid. Respondents on the other hand contend, and the trial court found, that this advance payment should be applied ". . . toward the first forty-seven maturing $500 monthly installments. . . ."

Appellant is administratrix of the estate of Walter J. Renz, deceased, the payee named in the note, and respondents are successors in interest to the assets of the Hotel Corporation of America, the obligor.

Prior to his death, Walter J. Renz and respondents were stockholders, officers and directors in the Hotel Corporation of America. Renz was offered the equity in an apartment building in Los Angeles in exchange for a ranch then owned by him. He agreed with the other directors that title should be taken in the name of the corporation. This was done and Renz took from the corporation the following installment note secured by a third deed of trust on the apartment building:

"$148,000.00 San Francisco, California, June 20, 1947.

"In installments as herein stated, for value received, I promise to pay to WALTER J. RENZ, or order, at San Francisco, California, the sum of - - - ONE HUNDRED FORTY-EIGHT THOUSAND & no/100 - - - DOLLARS, with interest from the date hereof on unpaid principal at the rate of - - five - - per cent per annum, payable monthly; principal payable in installments of - - - FIVE HUNDRED & no/100 - - - DOLLARS *or more* on the first day of each and every month, beginning on the first day of July, 1952, and continuing until said principal and interest have been paid.

*Assigned by Chairman of Judicial Council.

"Should interest not be so paid it shall thereafter bear like interest as the principal. Should default be made in payment of any installment of principal or interest when due the whole sum of principal and interest shall become immediately due at the option of the holder of this note. Principal and interest payable in lawful money of the United States. If action be instituted on this note I promise to pay such sum as the Court may fix as attorney's fees. This note is secured by a DEED OF TRUST to SOUTHERN CALIFORNIA ESCROW COMPANY, a California corporation.

"HOTEL CORPORATION OF AMERICA
"By John R. Bickel and Norman Elkington
"Its Vice-President Its Secretary"
(Emphasis added.)

In September, 1947, Renz subscribed in writing for 235 shares of stock in the Hotel Corporation of America at $100 per share, totaling $23,500, and the following receipt was executed:

"Receipt is acknowledged by the undersigned Walter J. Renz of *payment* by the Hotel Corporation of America in the amount of Twenty-Three Thousand Five Hundred & no/100 Dollars ($23,500.00) *on* the certain promissory note of Hotel Corporation of America to Walter J. Renz dated June 20, 1947 in the amount of One Hundred Forty Eight Thousand Dollars which said promissory note is secured by deed of trust dated _____ recorded in Volume _____ Official Records of Los Angeles County, page _____.

"Dated, September 15, 1947.

"Walter J. Renz." (Emphasis added.)

Renz died in 1949, and through correspondence exchanged between the parties to this action it developed that there was a difference of opinion as to how the $23,500 credit should be applied on the note. The filing of this action followed.

In their briefs the parties devote considerable attention to the correspondence which had passed between them and its influence upon the problem here. We do not deem it necessary to discuss the points raised pertaining to it, for the solution is not affected thereby. The parties do not contend that we must look beyond the instruments upon which the indebtedness and credit are founded if by their own terms they provide the answer.

The note provides that principal is "payable in installments of - - - FIVE HUNDRED & no/100 - - - DOLLARS *or more* on

the first day of each and every month, beginning on the first day of July, 1952'' and continuing until paid. (Emphasis added.) The subscription agreement provides for the $23,500 ''to be paid for by cancellation of portion of corporation's indebtedness to me.'' The receipt by Walter J. Renz acknowledges payment of $23,500 ''*on* the certain promissory note. . . .'' (Emphasis added.)

█ When payment is made *on* an obligation, unless there is some indication to the contrary, the practical and ordinary interpretation must undoubtedly be that payment is to be applied to the part first coming due to be paid. No rule or logical reason has been offered as to why, in the ordinary course of events, it should be approached the other way around. It certainly would not seem to be the ordinary thing to do, and it must be assumed that if the parties intended to depart from the ordinary they would have specifically so provided. Section 1479, subdivision 3, of the Civil Code may be deemed to bespeak such public or legislative policy as may exist on the point though it is conceded that installment obligations are not specifically mentioned. It provides in effect that if several obligations exist between a debtor and creditor and a payment is made by the debtor without designation as to the obligation on which it is to be credited, and if the creditor does not make an election within a reasonable time, the law will apply the payment to the obligation earliest in date of maturity.

█ It would seem also to be stretching rules of construction and reason a bit to say that just because a payment was made in advance of the due date of the first of a number of installments it cannot be considered payment of the installment first coming due, but must, on the contrary, be credited directly to a number of installments which would not fall due for years to come. Appellant contends that this advance payment cannot be credited to an installment first coming due because the note does not provide that payments can be made on *or before* the dates specified. It would seem that this reasoning would apply with equal force to the last 47 installments to which appellant seeks to have the $23,500 applied.

If appellant's reasoning is sound, the note could be paid in full *on* any of the installment dates because it provides for payments of $500 *or more,* but because it does not provide that payments may be made on *or before* the installment dates, no payment at all can be credited to any *installment*

unless paid *on* the actual due date. If it be said that this construction is too strict, then where in point of time is the line of distinction to be drawn? How long prior to the actual due date can a payment be made and still have legal standing as payment of an installment? Would it be a day, a week, or longer? The case of *Hanson* v. *Fox*, 155 Cal. 106 [99 P. 489, 132 Am.St.Rep. 72, 20 L.R.A.N.S. 338], cited by appellant, is not in point and does not help us.

In the absence of agreement to the contrary, it is undoubtedly the rule in installment cases providing for the payment of a specific amount *or more* at fixed intervals, that an excess payment made prior to or on one installment date is not effective to reduce the amount of or obviate the necessity of paying subsequent installments as they fall due according to the agreed schedule.

The case of *Harman* v. *Walsh*, 102 Cal.App.2d 608 [228 P.2d 333], involved an agreement for the sale of real estate calling for payments of "$100.00 *or more* dollars, per month on the 1st day of September, 1945, and the first day of each succeeding month thereafter, until such time as the principal has been reduced the amount of . . . $1,605.00." Payments in excess of $100 were made for several months and then fell below that amount. Notice of default was given to the buyer and the right of the seller to declare the buyer in default was upheld, even though the total amount which had been paid to the seller exceeded the amount which would have been paid in required monthly payments. In discussing the point, the court said: "Appellants' only privilege was to pay 'more' than the stipulated sum on the first of any month; no privilege to pay 'less' than $100.00 in any one month is granted." (P. 611.)

It will be noted in that part of the opinion just quoted, the court uses the language ". . . only privilege was to pay . . . *on* the first of any month . . ." The only question before the court was whether if the payor made an excess payment on one installment he was entitled to have the excess credited on those next successively following. It was held that he was not. The question of payor's right to make advance payment to apply only on the one installment next to become due was not involved. So even if the court there intended, by the use of this language, to restrict the payor's privilege to paying "*on*" the actual due date, it would be dicta and not binding as precedent here. Such a rule would be highly

impractical, particularly in those instances where payments are sent by mail or from a distance. Law is reason and as far as is possible it should be tailored to practical living. It is not the purpose of the law to unnecessarily magnify technicalities into practical difficulties, where preferring the practical involves no substantial invasion of legal rights.

 What was intended by the parties is manifest by the language in the receipt for stock executed by Walter J. Renz and accepted by the corporation. The $23,500 was acknowledged as *"payment . . . on* the note" which is singular, not plural. (Emphasis added.) Had the term *payments* been used it might then have been logically argued that the $23,500 was intended to be applied to a number of installments rather than only one.

We are aware of no law or binding precedent to the contrary, and therefore hold that consistent with what we deem to be the intent of the parties the $23,500 must all be considered as an advance payment of the first installment of $500 *or more,* but that it does not in anywise affect the remaining schedule of installments provided in the note, other than to lessen the principal sum by that amount and consequently reduce the number of installments remaining to be paid.

Since the judgment of the trial court directed application of the $23,500 to the first 47 installments, instead of only the first, it must be, and it is, reversed with directions to the trial court to amend its findings and conclusions and to enter judgment in accordance with the views herein expressed.

Peters, P. J., and Bray, J., concurred