Argued September 5, affirmed November 21, 1974

ZERKEL ET UX, *Appellants, v.*
LINDSEY ET UX, *Respondents.*
528 P2d 1041

*Paul Jolma,* Clatskanie, argued the cause and filed briefs for appellants.

*Nicholas D. Zafiratos,* Astoria, argued the cause and filed a brief for respondents.

Before O'Connell, Chief Justice, and McAllister, Holman, Tongue, Howell, Bryson and Sloper, Justices.

SLOPER, J. (Pro Tempore)

This is an appeal by Frank C. Zerkel and Mildred E. Zerkel, husband and wife, as the sellers of certain real property, under a land sale contract, from a decree of the circuit court entered in favor of the defendants, Jack Lindsey and Carolyn Lindsey, husband and wife, buyers, dismissing plaintiffs' complaint and supplemental complaint. Plaintiffs' complaint seeks strict foreclosure for default in payment of the January 1973 installment which was delinquent prior to plaintiffs' election to declare the balance due on February 9, 1973. Plaintiffs' supplemental complaint included as a further ground for foreclosure an alleged breach that defendants had encumbered to a third party a mobile home covered by the lien of the contract. The answer of defendants admitted the execution of the contract and affirmatively alleged, first, that the contract was not in default at the time plaintiffs declared the contract to be in default; second, that plaintiffs had received full payment of current indebtedness under the terms of the contract subsequent to the commencement of the action and had waived their right to foreclose said contract by accepting said payments; and, third, that defendants were ready, willing and able to perform all terms and conditions of the contract and that plaintiffs are estopped to deny that defendants are not in default.

The trial court on August 3, 1973, in a memorandum opinion held that defendants had overpaid suf-

ficiently on the contract and that, therefore, they were not in default on payments; and that defendants were entitled to a 10-day notice under the provisions of the contract concerning the encumbrance of the mobile home.

Thereafter, on August 13, 1973, plaintiffs filed a motion directing that certain exhibits, to wit: Exhibit 1: checks from defendants in the sum of $200 each and dated March 30, 1973, April 30, 1973, May 25, 1973, and June 26, 1973, and Exhibit 23: a $400 cashier's check payable to plaintiffs, be turned over to plaintiffs. An amended motion was filed on September 4, 1973, concerning the same exhibits and attempting to state unilaterally that the return of said exhibits would not be a waiver of any rights of plaintiffs in receiving and cashing the checks.

On September 20, 1973, the court entered findings of fact and conclusions of law, and on October 10, 1973, the court allowed the amended motion of plaintiffs, filed August 13, 1973, returning Exhibits 1 and 23, and specifically made no ruling as to whether the receipt and cashing of the exhibits would constitute a waiver or whether that action would in any way affect plaintiffs' rights on appeal. On October 26, 1973, the court entered a decree dismissing plaintiffs' complaint and supplemental complaint with prejudice and denied foreclosure.

■ Plaintiffs' first assignment of error contends that the trial judge erred in ruling that defendants were not in default in payments on the contract at the time that plaintiffs declared the entire balance due on February 9 and commenced suit on February 12. The facts indicate that the total payments made by defendants

prior to January 1973 exceeded the total of the monthly payments required to have been made under the terms of the contract. At the time of oral argument counsel advised this court that the amount of such overpayment as of February 9, 1973, was in the sum of $237.75. The trial judge concluded that these excess payments could be applied toward the January 1973 payment and, therefore, defendants were not at that time in default on the monthly payments. We hold that the trial judge was in error in this ruling and to affirm his action would in legal effect be rewriting the contract between the parties and ignoring the express provision in the contract which required a minimum monthly payment:

> "* * * The purchase price will be paid at the rate of $50.00 or more per month, plus accrued interest, with the first monthly payment to be made on October 1, 1970 and a like payment on the first (1st) day of each month thereafter until the purchase price and interest have been paid in full. * * *."

■ This type of provision in a land sale contract has not previously been subject to judicial interpretation by this court. However, appellate courts in other jurisdictions have interpreted such provisions and have uniformly held that where the buyer has the option of making larger payments than the minimum under the contract, such excess payments may not be applied toward future minimum monthly payments. The buyer must make the minimum required monthly payments or be in default. *McBride v. Stewart,* 68 Utah 12, 249 P 114, 48 ALR 267 (1926):

> "That the plaintiff was in default in making the payments as provided in the contract appears affirmatively from the allegations of the complaint.

The total amount of payments made before the re-entry by defendants was equal to or greater than the sum of $30 per month, the minimum provided by the contract. The contract, however, was that the plaintiff should pay $30 or more per month. The payment of $675 in August 1920, did not relieve the plaintiff of the duty under her contract, to pay $30 each and every month thereafter." 68 Utah at 15.

In the case of *Harman v. Walsh,* 102 Cal App2d 608, 228 P2d 333 (1951), which involved a land sale contract providing for payments of $100 or more per month, payments in excess of that required were made for several months and then the payments fell below that sum, the court stated:

> "The appellants' contentions are without merit, and the record discloses no reversible error. As pointed out in respondents' brief, the agreement of sale is clear and unambiguous; it means exactly what it says. By express terms the contract obligates the buyers to pay '$100.00 or more Dollars per month on the 1st day of September, 1945, and the first day of each succeeding month thereafter.' Nowhere in the instrument is there any suggestion that in the event appellants should pay more than $100 in one month, later monthly payments should be reduced by the excess. Appellants' only privilege was to pay 'more' than the stipulated sum on the first of any month; no privilege to pay 'less' than $100 in any one month is granted. To read such a provision into an explicit written contract would amount to imposing upon the sellers additional terms not mentioned in the written instrument and in effect would negative the provision that 'time is of the essence of this contract.'" 102 Cal App2d at 610-611.

*Harman v. Walsh,* supra (102 Cal App2d 608), was

cited with approval in *Smith v. Renz,* 122 Cal App2d 535, 265 P2d 160 (1954), and the court went on to say:

"In the absence of agreement to the contrary, it is undoubtedly the rule in installment cases providing for the payment of a specific amount *or more* at fixed intervals, that an excess payment made prior to or on one installment date is not effective to reduce the amount of or obviate the necessity of paying subsequent installments as they fall due according to the agreed schedule.

"* * * * *.

"We are aware of no law or binding precedent to the contrary, and therefore hold that consistent with what we deem to be the intent of the parties the $23,500 must be considered as an advance payment of the first installment of $500 or more, but that it does not in any wise affect the remaining schedule of installments provided in the note, other than to lessen the principal sum by that amount and consequently reduce the number of installments remaining to be paid." 122 Cal App2d at 539-540.

And in *DeVilliers v. Balcomb,* 79 NM 572, 446 P2d 220 (1968), a similar case of excess payment, the court held:

"* * * An overpayment in one period by one who has purchased real estate under a contract obligating him to pay a specified sum *or more* each period does not relieve him of the duty of paying the specified amount on each and every payment date thereafter. * * *." 79 NM at 573.

■ Plaintiffs' second assignment of error contends that the trial court erred in not granting a decree of strict foreclosure. The court made such ruling, of course, for the reason that he did not find that defendants were in default under the terms of the contract. Having just determined that the court was in error in so ruling, because defendants were, in fact, in de-

fault on February 9, 1973, at which time plaintiffs elected to declare the entire unpaid balance due and payable, and gave both oral and written notice of such intention, we must proceed to determine if there was any waiver by plaintiffs of their right to strict foreclosure. Under the terms of the contract, the grace period of 30 days for payment of the January 1973 payment expired on January 31, 1973. The complaint for foreclosure in this case was filed on February 12, 1973. The evidence indicates and the trial court found that after the notice on February 9 and before the complaint was filed on February 12, defendants tendered to plaintiffs the past-due January payment, as well as the February payment. Defendants also continued to tender to plaintiffs' attorney the subsequent four monthly payments. These four monthly payments are in addition to a cashier's check in the sum of $400 tendered by defendants on or about February 13, 1973, for the January and February payments. Defendants' counsel was advised by plaintiffs' counsel on February 27, defendants' Exhibit 5, and again on March 30, defendants' Exhibit 6, that they would receive such checks without any prejudice to proceed with the foreclosure suit and would credit such checks on the unpaid balance. Counsel for plaintiffs retained these checks until time of trial when they were produced and admitted as defendants' Exhibits 1 and 23. We do not find any waiver by plaintiffs' retention of these checks under the circumstances here related.

■ The evidence also discloses that prior to February 1972 defendants occasionally were in default on the time the monthly payments were made and that plaintiffs had acquiesced in this course of conduct; however, thereafter, and on February 8, 1972, defendants were

advised by a letter from plaintiffs' counsel (plaintiffs' Exhibit 22) that, thereafter, they would require timely payments in accordance with the terms of the contract. Between that time and the time suit was filed, defendants were one day late on the monthly payment for August 1972. We hold that the "time is of the essence" part of the contract was revived by reasonable notice (plaintiffs' Exhibit 22) and that the default by defendants on the January 1972 payment entitled plaintiffs to proceed to foreclosure, and that accepting the August 1972 payment one day late would not amount to a further waiver. In *Stinemeyer v. Wesco Farms, Inc.*, 260 Or 109, 116, 487 P2d 65 (1971), we said:

> "* * * The vendor who has, by a practice of accepting late payments, permitted the purchaser to rely on this course of conduct, need only give reasonable notice that thereafter he will insist on strict performance of the contract. Further defaults would entitle him to his foreclosure remedy."

■ The third assignment of error is based upon the trial court's refusal to grant any relief, either as a ground of foreclosure or as a cause of action for damages, for the act of defendants in encumbering the mobile home on the premises to a third party. Defendants mortgaged the mobile home to the Portland Teachers Credit Union on April 24, 1971 (plaintiffs' Exhibit 18). We find that this encumbrance on the mobile home was a breach of the contract. In this connection the contract provided:

> "* * * It is agreed that Buyers may also sell the mobile home and contents and Sellers will release the title to that upon being paid sixty (60%) per cent of the price for which Buyers sell said mobile home and contents or Five Thousand and no/100 ($5,000.00) Dollars, whichever sum is greater. * * *."

Defendants argue that under the terms of the contract they are entitled to written notice of such breach and the opportunity within 10 days after the notice to remedy the default:

"* * * Provided that Buyers shall not be deemed in default for failure to perform any covenant or condition of this contract other than failure to make payments on the purchase price as provided for herein until notice of said default has been given by the Sellers to the Buyers, and Buyers have failed to remedy said default within ten (10) days after the giving of the notice. Notice for this purpose shall be deemed to have been given by the deposit in the mail of a letter containing said notice and addressed to either of the Buyers or to both of them at their last known address. * * *."

■ Plaintiffs, on the other hand, argue that the filing of the supplemental complaint is sufficient notice and that defendants had ample opportunity after that time and before trial to remedy the breach. The filing of the foreclosure action would be deemed to be sufficient notice of the intention to declare the unpaid balance due and payable for delinquent payments. *Smith v. Owen,* 208 Or 154, 157, 300 P2d 423 (1956):

"* * * [T]here is no evidence that the holder of the note ever exercised the option therein given to declare the whole amount unpaid, 'due and immediately payable' after a default. Institution of the action was all that was required for the exercise of the option. * * *."

■ However, we do not believe that the filing of the supplemental complaint was adequate notice for the breach of encumbering the mobile home. The reason for this conclusion is that it could not be predicted by the parties at the time of the execution of the contract what possible breaches might occur and plaintiffs

bound themselves to give the notice as required by the contract, and to give defendants opportunity to remedy the breach. We cannot presume that if adequate notice as required in the contract had been given that defendants could not or would not remedy the breach. We conclude, therefore, that the trial court was correct in denying any relief for this breach.

■ The concluding assignment of error contends that the trial court erred in allowing plaintiffs' amended motion to return defendants' Exhibits 1 and 23 to plaintiffs without ruling that receipt of said exhibits would not constitute a waiver nor affect plaintiffs' right to appeal. We believe that plaintiffs misconceive this alleged error. The trial judge did not decide the request either erroneously or correctly. He simply did not decide it and no error attaches for refusal to rule in this instance.

■ This resolution of this assignment of error does not, however, dispose of the problem created by plaintiffs' action in removing the exhibits from evidence and cashing them. Although we have concluded that defendants were in default on the monthly installment payments, it does not necessarily follow, under the particular facts of this case, that strict foreclosure should be allowed. We recognize and reaffirm the rule announced in *Blondell v. Beam*, 243 Or 293, 413 P2d 397 (1966), that in a proper case strict foreclosure will be permitted. In that case we stated:

> "* * * Where, as in the instant case, the contract provides for strict foreclosure in the event of a default by the vendees, the contract contains a time-essence clause, the default is material and has not been waived, the plaintiff is entitled to foreclosure in some form as a matter of right. The limit of discretion of a court of equity in such a

case is in the determination of the form foreclosure shall take, i.e., strict foreclosure or foreclosure and judicial sale." 243 Or at 298.

This case was followed by *Kinkaid v. Fitzwater,* 257 Or 170, 174, 474 P2d 742, 477 P2d 712 (1970), where we said:

> "We cannot add anything to what we said in *Blondell v. Beam,* supra [243 Or 293]. The defendants contracted to pay the taxes before they became delinquent. They had no right to harass plaintiffs by consistently failing to comply with the contract. Since defendants chose to breach the contract, plaintiffs were entitled to exercise the remedies provided therein. Neither the trial court nor this court has any authority to modify the contract for either party."

As will be explained, we do not feel that the above rule should be applied in this case.

The difficult problem presented in this case is the legal effect of plaintiffs' removal from evidence and subsequent cashing of the monthly installments tendered by defendants from the time plaintiffs elected to declare the principal sum due and owing until and even after the decree entered below. We discern from the affidavit filed by defendants' counsel in support of his motion to dismiss the appeal that plaintiffs have retained the subsequent monthly installments tendered by defendants following the date of the decree up to at least the date of the affidavit, which is December 14, 1973. Plaintiffs urge that their acceptance and cashing of the checks should not be considered as a waiver of any of their rights in connection with their suit to foreclose. It is doubtful that plaintiffs by their unilateral assertion of no prejudice can reap the benefits of the decree without the attendant hazards which

legally attach to their actions. Having accepted the performance tendered by defendants and retained the installment payments made since the decree, plaintiffs are not now entitled to foreclose. We conclude, therefore, that plaintiffs are estopped to deny that, the tendered payments and their acceptance, satisfies defendants' obligation under the contract as of the time of the filing of the foreclosure complaint.

■ ■ As a further basis for denying foreclosure, we hold that plaintiffs' action in accepting the installment payments as noted above constitutes an acquiescence in the trial court's decree amounting to a waiver of their right of appeal. This court has in the past applied the rule that if a party acquiesces in or accepts benefits from a trial court judgment, he has waived his right to appeal the judgment. In *Moore v. Floyd,* 4 Or 260, 262 (1872), it is stated:

"* * * The right to proceed on the judgment and enjoy its fruits, and the right of appeal, are not concurrent; on the contrary, they are totally inconsistent. An election to take one of these courses was, therefore, a renunciation of the other. * * *."

This statement was cited with approval in *Pac. Gen. Contrs. v. Slate Const. Co.,* 196 Or 608, 611, 251 P2d 454 (1952), and in *Cottrell v. Prier,* 191 Or 571, 575, 231 P2d 788 (1951), in which the court held that a defendant in a suit for specific performance of a real estate contract had waived his right to appeal by accepting the purchase price from plaintiff and tendering a deed in compliance with the decree. The opinion relied upon and quoted an Arkansas case which is closely analogous to the present case. In *Cranford v. Hodges,* 141 Ark 587, 218 SW 185 (1920), the court dismissed the appeal and held that the action of one

of the parties in withdrawing money paid into court to compensate her for the cancellation of a deed by the decree of the trial court, was inconsistent with the right to appeal. The party had attempted to preserve the right to appeal by filing a bond with the court stipulating that she would return the money if her appeal was unsuccessful. The court held, however:

"* * * The use of this money pending this appeal is itself a benefit and one which Mrs. Pearce has the right to enjoy only because her deed was canceled, and it is inconsistent for her to enjoy the use of money to which she is only entitled because her deed has been canceled and, while using the money thus obtained, prosecute a suit to reverse the very decree under which that right is enjoyed. * * *." 141 Ark at 590.

This reasoning compels us to the conclusion that in the case at hand plaintiffs ought not to be allowed to accept the installments held by the court and those tendered even after the decree while the matter was pending on appeal and to which they are entitled by virtue of the trial court's denial of strict foreclosure and at the same time appeal that denial. This inconsistency by plaintiffs in accepting benefits flowing from the trial court's decree will bar their appeal in this case.

Although the trial court was in error in concluding that defendants were not in default on the installment payments, our disposition of the case requires an affirmance of the trial court decree dismissing plaintiffs' suit for strict foreclosure.

Affirmed.

HOWELL, J., concurring in part and dissenting in part.

I agree with all aspects of the majority opinion

except that portion which holds that the defendants were in default for failing to make the January 1973 payment of $50 although defendants had overpaid the monthly amounts due the sellers by $237.75.

I appreciate that other courts have held that contracts requiring monthly or yearly payments of a certain amount "or more" do not relieve the purchaser of paying the next due installment even though he has paid and the seller has accepted amounts in excess of the minimum payment. This question is a matter of first impression in this state.

I would agree with the trial court in the instant case that the defendants' rights should not be subject to a forfeiture where they have paid more than the minimum amount required by the contract. A suit for strict foreclosure is an equitable proceeding and should be governed by equitable principles. It is inconceivable to me that a purchaser who has paid several months or years in advance on his purchase contract should be subject to a default and his interest in the contract forfeited if he fails to pay the next installment due. Under such rule a purchaser who is required, for example, to make his payment on the first day of each month and thereafter makes another payment in the same month is in default if he fails to make the payment due on the first of the following month.

I would hold that the defendants were not in default when they failed to make the January 1973 payment.

O'CONNELL, C. J., and TONGUE, J., join in this opinion.