# UNITED STATES NATIONAL BANK OF OREGON,
## *Respondent,*
### *v.*
## SMITH,
### *Appellant.*

## (No. 78-3448) CA 16508)
619 P2d 921

Harold D. Gillis, Eugene, argued the cause and filed the briefs for appellant.

Richard Bryson, Eugene, argued the cause for respondent. With him on the brief was Bryson & Bryson, Eugene.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

## ROBERTS, J.

This is a suit seeking foreclosure of a mortgage and a judgment for the balance due on a promissory note. The trial court awarded plaintiff a judgment against W. R. and Patricia Lynn Smith for $5,455.80 plus interest and a title search fee of $50. The court directed foreclosure of the mortgage and the sale of the real property on execution to satisfy the judgment. Plaintiff's mortgage was found to be superior to the claims of all other defendants. Plaintiff was also awarded attorney fees. On appeal, defendant W. R. Smith claims the trial court erred in entering judgment for the balance of the promissory note and decreeing the foreclosure of the mortgage.[1] He also assigns as error the granting of attorney fees to plaintiff in excess of those prayed for in its original complaint. We affirm the judgment but modify the attorney fee award.

Defendant W. R. Smith (defendant) is the owner of a piece of property on River Road in Eugene which, in December, 1965, he leased to Standard Oil Company of California as a site for construction of a service station. Under the terms of the lease, Standard was to pay defendant rent of $500 per month for 15 years once the station was built. All rentals were payable to W. R. Smith unless another arrangement was established. The lease also provided that, in the event Standard terminated the lease, the lessor was to receive $62,000 less $344.44 for each month the lease had been in effect.

On May 26, 1966, defendant arranged to borrow $62,000 from plaintiff U.S. National Bank. This was an amount equal to the guaranteed rent to be paid by Standard. Security for the loan was a mortgage on the property leased to Standard and assignment of the lease, as required by the mortgage. Defendant executed a promissory note for $62,000, agreeing to repay it "in monthly installments of not less than $498.50 in each payment." Both the note and the terms of the mortgage gave the bank the option to

---

[1] Defendant Patricia Lynn Smith was divorced from defendant W. R. Smith on December 17, 1976 and the property in question was awarded to him in that settlement. She entered a general denial in this action.

demand full payment on the note if any installment became overdue. By the lease assignment, defendant gave over

> "all of [their] right, title and interest as Lessors in and to that certain Service Station Site and Facilities lease . . . together with the moneys due and to become due thereunder, and the Lessee is hereby instructed and directed to make all payments required by the provisions of said Lease directly to said Bank."

Standard's lease payments of $500 per month were paid directly to the bank to cover the monthly note installments. The $1.50 per month difference was, at first, deposited in a savings account for defendant. After 1970, it was simply applied to the note.

The agreement between the parties contained no provision permitting prepayments to be applied against future payments. Instead, under the lease assignment, plaintiff was entitled to the moneys due under the lease, which would include the penalty for terminating the lease. Defendant was required to pay a minimum amount each month, regardless of whether in any one month more than that amount was paid on the note.

In October, 1977, Standard notified defendant it intended to terminate the lease and pay him the termination penalty. On November 1, Standard did not make its regular lease payment. The bank, checking with Standard about the delinquent payment, discovered Standard intended to pay the penalty to defendant and insisted the money be paid to it instead. On December 2, Chevron USA[2] sent the bank a check for $14,811.09, and cancelled its lease on defendant's property. The bank applied this amount to the balance due on defendant's note and, the same day, wrote asking him to come in and make arrangements to pay the remaining balance, approximately $5,657.18, "in full." Defendant called the bank and asked that the termination payment either be turned over to him or be applied to future payments. The plaintiff refused both requests.

---

[2] It was apparently during the term of this lease that Standard changed its name and became Chevron.

Defendants made no further payments on the note. Plaintiff filed its foreclosure suit June 1, 1978, calling due the entire unpaid balance of $5,657.18.

Defendant contends on appeal that he was entitled to have the $14,811.09 termination payment applied to future note installments, that plaintiff was not entitled to accelerate the note upon termination of the lease, and that foreclosure should be denied. We review *de novo. Gibraltar Finance Corp. v. Rouse,* 145 Or 89, 25 P2d 559 (1933), ORS 19.125(3).

■■  By the terms of the promissory note, defendant was obligated to pay *not less than* $498.50 each month. The question of whether Standard's prepayment should have relieved him of his regular monthly obligation is answered in *Zerkel v. Lindsey,* 270 Or 517, 528 P2d 1041 (1974). In *Zerkel,* buyers under a land sale contract were obligated to pay $50 *or more* per month. The court held that where the buyer has the option of making larger payments than the minimum under the contract, excess payments are not to be applied toward future payments. The court stated: "The buyer must make the minimum required monthly payments or be in default." 270 Or at 522. In the case before us, defendant did not have the express option of making larger monthly payments on his note, but he was expressly obligated to pay "not less than $498.50 in each payment." The general rule of *Zerkel,* that the minimum must be paid, applies, despite the language difference in the contracts. The terms of the note gave the bank the option of calling the whole amount due if one installment was missed. There is no dispute that no payments were made on the note after December 2, 1977, when Standard ceased making its lease payments directly to the bank. Plaintiff thus had a right to demand full payment in January, 1978.[3]

■  Defendant next argues that the bank was not entitled to accelerate its promissory note payment upon termination of the lease. That is not the issue here. The note was called, not because the lease had been terminated,

---

[3] The cases and principles relied upon by defendant, relating to the application of payments, have to do with situations in which payment is being made on an open account or where there are several debts between the same debtor and creditor. Here there was only one debt between defendant and the bank.

but because defendant had missed six payments. The bank manager who drafted the letter to defendant on December 2, 1977, asking that arrangements be made for full payment of the $5,657.18 balance on the note, testified that an agreement to pay installments would have been acceptable. Defendant only contacted the bank to demand the $14,811.09. He therefore was in default and the bank was entitled to demand full payment.[4]

Defendant also assigns as error the award of attorney fees to plaintiff in excess of those pleaded in its complaint. By the terms of the promissory note, defendant agreed to pay reasonable attorney fees, as determined by the court, in any action to collect on the note. The complaint filed by plaintiff June 1, 1978, requested $750 attorney fees as reasonable. At trial, in October, 1979, the parties stipulated that the fees could be submitted as part of the prevailing party's cost bill. Plaintiff, in closing arguments on November 26, 1979, repeated this stipulation and advised the court it would ask leave at the proper time to amend the complaint to conform to proof of increased fees. On December 11, the court entered its findings and decree, awarding judgment and costs to plaintiff. On December 19, plaintiff submitted a cost bill including a request for $3,156.50 in attorney fees, and defendant filed an objection to that portion of the cost bill seeking attorney fees in excess of $750. Plaintiff then filed on December 27, a motion to amend and supplement its complaint, to which defendant again objected. On January 11, the court denied the objection to the cost bill, and on January 22 granted the

---

[4] Defendant claims that the bank should be denied foreclosure because it charged borrowers, including defendant, more interest than it was entitled to receive and thus came into a court of equity with "unclean hands." Defendant contends that in quoting defendant a 5.25 percent interest rate on his loan, but calculating it on a 360-day year rather than a 365-day year, the bank was actually charging him 5.3229 percent interest, and thus applying less of his payments to principal, so that the total due was actually something less than $5,657.18. Even if the bank were guilty of wrongdoing it purged itself by offering, during trial, to adjust the balance due on the note by subtracting the excess interest and making a formal motion to amend the complaint to do so. *See Dickerson v. Murfield,* 173 Or 662, 147 P2d 194 (1944). The judgment awarded the bank was $5,455.80, the amount due less the $201.38 calculated to be interest in excess of 5.25 percent. Defendant has thus not been damaged by the bank's actions, and cannot invoke the "unclean hands" doctrine on the basis of an alleged wrong done *other* bank customers. *Baxter v. Redevco, Inc.,* 279 Or 117, 566 P2d 501 (1977).

motion to amend the complaint to increase the prayer for attorney fees to $3,156.50.

■ ■ It was improper to allow amendment of the pleadings after the entry of judgment. ORS 16.390; *Scott v. Ford,* 52 Or 288, 97 P 99 (1908); *see Walters v. Dock Commission,* 126 Or 487, 266 P 634, 270 P 778 (1928). Since plaintiff did not amend the portion of its complaint relating to fees during trial, plaintiff's recovery for attorney fees is limited to the amount prayed for. *Christy v. Christy,* 244 Or 575, 419 P2d 425 (1966); *Parker v. SIAC,* 242 Or 78, 408 P2d 94 (1965).

Plaintiff's judgment against defendant for $5,455.80 plus interest, a title search fee of $50, and costs and disbursements is affirmed. Plaintiff is, in addition, entitled to recover attorney fees of $750.

Affirmed as modified.