EDWARDS,
*Appellant,*

*v.*

HAUGHT et al,
*Defendants,*
ESTATE OF MARY ANN HAUGHT,
*Respondent.*

(84-332; CA A32778)

717 P2d 1189

Gary D. Rossi, Coos Bay, argued the cause and filed the brief for appellant.

Cameron C. Thom, Coos Bay, filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff appeals from a judgment dismissing his action for strict foreclosure of a land sale contract. We affirm.

On February 9, 1968, plaintiff as seller and Duane and Mary Ann Haught as buyers entered into a contract for the sale of certain real estate in Coos Bay. The section covering plaintiff's remedies provides:

"In the event that the Buyers shall fail to make any of the payments as herein provided, or fail to keep any of the other covenants, conditions or agreements herein contained, then the Sellers may give written notice to the Buyers of such default; and, if such payments, covenants, conditions and agreements have not been fully paid, executed and fulfilled within the period of thirty days after the date of said notice, then and in that event this agreement shall become null and void, and all of the rights and interests created herein, or then existing, in favor of the Buyers as against the Sellers shall utterly cease and determine, and the right to possession of the premises herein described shall revert to the Sellers without any act of re-entry, and all payments received by the Sellers from the Buyers under this agreement shall be retained by the Sellers as liquidated damages for the breach of this contract and as compensation for the loss of use of said premises.

"In addition to any of the other remedies provided herein, the Sellers shall have the right to bring legal action or suit for strict foreclosure of this contract with the entire balance of the purchase price to be immediately due and payable, for damages for breach of any of the terms of this contract, for the collection of any past due payments owing to the Sellers, or for any other remedy permitted by law, without waiving the right to terminate their agreement or to enforce any remedy provided herein for subsequent breach or default on the part of the Buyers.

"In the event that the Buyers shall fail to fulfill promptly the obligation to pay taxes, liens and encumbrances or to keep Sellers' interests insured against loss by fire, then the Sellers may, in lieu of any of the other remedies provided herein, pay such tax, lien, encumbrance or insurance, or any part thereof, and either collect the same from the Buyers or add the amount thereof to the balance of this contract."

The original contract was typewritten, with certain additions and deletions made by hand. After deletions had

been made, the paragraph covering the buyers' duty to pay taxes read:

> "Buyers covenant and agree that they will pay all property taxes, assessments and improvements made or levied upon said property which shall accrue during the life of this contract; and such payment shall fully satisfy the Buyers' obligation under this contract to pay taxes and provide insurance."

At some time after the agreement was signed, the parties orally agreed that the buyers would pay $45 per month into a tax reserve account in addition to the monthly payments of principal and interest. The date and precise terms of the oral agreement are not in the record, but a letter plaintiff wrote in 1974 refers to the balance of the "Western Bank Tax Account."

The Haughts were divorced. Mary Ann was awarded their whole interest in the property and assumed their obligations under the sales contract. She died in March, 1982, and her daughter, defendant Shorb, was named personal representative of her estate. Defendants regularly paid all amounts due under the contract[1] and the oral agreement.

The $45 monthly payments into the tax reserve account proved insufficient to pay all of the taxes, but plaintiff made no request that the defendants increase the tax reserve. In August, 1983, he sent a letter to Shorb's husband, indicating that taxes of $3,759.98 were due on the property and that the balance of the tax reserve account was only $560.43. The letter requested "comments concerning this matter." Shorb did not respond to the letter, but made tax payments of approximately $1,300 in November, 1983.

Also in November, 1983, plaintiff sent a letter to Duane, with whom Shorb had lost contact, threatening legal action unless the taxes were paid within 30 days. Haught did not respond. Plaintiff brought this action in February, 1984. Shorb paid all the taxes due on the property within a few days after being served with the complaint.

---

[1] Some of the correspondence introduced at trial suggests that plaintiff initially had problems with late payments under the contract. Plaintiff does not assert that on appeal, however, and does not dispute defendant's assertion that all payments were regularly made.

The trial court found that "[t]he ambiguity created by the contract and the tax reserve arrangement set up in the escrow collection would not support a foreclosure at this time" and dismissed plaintiff's complaint for foreclosure. Plaintiff argues that the trial court had no discretion to deny him relief by foreclosure. He relies on *Kincaid v. Fitzwater*, 257 Or 170, 474 P2d 742 (1970), which resembles the present case in that the plaintiffs sued to foreclose a land sale contract because the defendants had failed to meet their obligations under the contract to pay property taxes. However, there was no tax reserve account in *Kincaid*. The plaintiffs were obligated to pay the taxes directly and consistently failed to do so. After the action was filed, the plaintiffs paid all the delinquent taxes. The Supreme Court held that its decision was controlled by *Blondell v. Beam*, 243 Or 293, 298, 413 P2d 397 (1966), in which it had said:

> "Where, as in the instant case, the contract provides for strict foreclosure in the event of a default by the vendees, the contract contains a time-essence clause, the default is material and has not been waived, the plaintiff is entitled to foreclosure in some form as a matter of right. The limit of discretion of a court of equity in such a case is in the determination of the form foreclosure shall take, i.e., strict foreclosure or foreclosure and judicial sale."

This case differs sufficiently from *Kincaid* and *Blondell* to justify a departure from the rule. Those cases do not abrogate the principle that foreclosure actions are in equity. *See Zerkel v. Lindsey*, 270 Or 517, 528 P2d 1041 (1974).

Here, plaintiff agreed to tax reserve payments of an amount that proved to be insufficient. He could have insisted on higher payments, or he could have insisted that the buyers pay the taxes directly. Plaintiff asserts that the funds in the tax reserve account were not meant to pay all of the taxes and that "[f]rom time to time these funds were used to pay taxes together with Buyers' direct payment of the taxes." The portion of the record that plaintiff cites in support of that assertion indicates only that, early in the life of the agreement, Duane occasionally had paid taxes, using the money in the tax reserve account, not that he had paid additional sums to make up the difference between the taxes due and the balance in the tax reserve account. In later years, property tax notices were sent to plaintiff, and he paid the taxes, using funds from the

tax reserve account. The record does not indicate that Shorb knew of any property tax deficiency before August, 1983. All the tax reserve payments had been paid; plaintiff had made no demand that those payments be increased; and defendants had received no tax statements for several years.

■  Before filing the action to foreclose the contract in February, 1984, plaintiff had written to Shorb's *husband* in August, 1983, pointing out that there were taxes due on the property and inviting "comments concerning this matter." Plaintiff's letter was not directed to Shorb and did not suggest that any action would be taken if the taxes were not fully paid within 30 days. Therefore, it did not adequately serve as notice to Shorb that plaintiff was claiming a default.

■■  In November, 1983, plaintiff wrote to Duane (who no longer held any interest in the property) advising him of the tax deficiency and that, "unless the taxes are brought up to date within thirty (30) days from the date of this letter, legal action will be initiated." The letter constituted notice of default in compliance with the contract only as to Duane. Shorb was entitled to an equivalent notice under the contract. None was given, although her address was printed on checks she had written in making the monthly contract payments.[2] It was not the same address as that to which plaintiff had sent notice of default to Duane. On these facts, we hold that plaintiff did not give defendant Shorb notice of default that complied with the contract and, therefore, was not entitled to strictly foreclose the contract.

Affirmed.

---

[2] It was the same address at which she was served with the summons and complaint.