**DiMARCO, Appellant,**

v.

**SHAY, Trustee, Appellee.**

[Cite as *DiMarco v. Shay,* 154 Ohio App.3d 141, 2003-Ohio-4685.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1317.

Decided Sept. 4, 2003.

Fry, Waller & McCann Co., L.P.A., and Barry A. Waller, for appellant.

Vorys, Sater, Seymour & Pease, L.L.P., and Philip F. Downey, for appellee.

---

WATSON, Judge.

{¶ 1} Plaintiff-appellant, Al DiMarco ("plaintiff"), appeals from the decision and judgment entry of the Franklin County Court of Common Pleas denying his motion for partial summary judgment and granting summary judgment in favor of defendant-appellee, Richard C. Shay, Trustee of the Richard C. Shay Trust ("defendant"). For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2} On or about March 24, 1998, plaintiff entered into a land installment contract ("contract") with defendant for the purchase of 1519 Schrock Road, Columbus, Ohio. The contract provides for the purchase of the property by plaintiff for a total purchase price of $350,000. The relevant portions of the contract follow:

{¶ 3} "1. (b) The remaining principle balance of the Purchase Price ($340,000),[1] together with accrued interest on the declining unpaid balance at the rate of 10% per annum from the date hereof, shall be paid in one hundred eighty (180) consecutive monthly installments of $3,653.66 or more, beginning on the 1st day of May, 1998, and continuing on the same day of each subsequent month thereafter until said balance and accrued interest are paid in full, all in accor-

---

1. Plaintiff made a $10,000 down payment toward the purchase price.

dance with the amortization schedule which is attached hereto as Exhibit B ["payment clause"].

{¶ 4} " * * *

{¶ 5} "(c) The unpaid principal balance on which interest shall accrue shall be adjusted monthly as payments are received. If [plaintiff] fails to make any installment due under this Contract within 10 days of its due date, a late charge of 5% of such payment shall be charged [plaintiff] ["interest clause"]."

{¶ 6} In accordance with the amortization schedule, plaintiff is to pay $3,653.66 monthly from May 1, 1998 until March 1, 2013. The final monthly payment, due on April 1, 2013, is $4,432.33. Since the execution of the contract, plaintiff has paid the monthly payments in accordance with its terms.

{¶ 7} In July 2001, plaintiff spoke with defendant regarding the fact that road construction was negatively effecting his business. Thus, plaintiff desired to refinance the contract. In late July 2001, plaintiff advised defendant that he had obtained financing to pay off the outstanding principal and accrued interest. However, when plaintiff attempted to tender the payoff of the contract, defendant refused to accept the tender and complete the transaction.

{¶ 8} On November 20, 2001, plaintiff filed a declaratory-judgment action against defendant. Specifically, plaintiff sought a declaration from the trial court that plaintiff, as mortgagor under the contract, had the right to prepay the outstanding principal and accrued interest. Plaintiff filed a motion for partial summary judgment seeking this declaration. Defendant also filed a motion for summary judgment seeking the determination that plaintiff did not have the right to prepay the outstanding principal and accrued interest. On November 1, 2002, the trial court denied plaintiff's partial motion for summary judgment and sustained defendant's motion for summary judgment, concluding that the contract did not extend the right of prepayment to plaintiff. Plaintiff timely filed the instant appeal.

{¶ 9} Plaintiff asserts the following assignment of error:

{¶ 10} "The trial court erred in granting [defendant's] motion for summary judgment and denying [plaintiff's] motion for partial summary judgment."

{¶ 11} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law,

and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. In the summary judgment context, a material fact is one that might affect the outcome of the suit under the applicable substantive law. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123. When determining what is a genuine issue, the court decides if the evidence presents a sufficient disagreement between the parties' positions. Id.

{¶ 12} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).

{¶ 13} Two schools of thought exist with respect to a mortgagor's right to compel a creditor to accept prepayments absent statutory authority or contractual language reserving an option or right to accelerate payments. The majority rule[2] holds that "absent special agreement, the mortgagor in an unregulated transaction who promises to repay the loan, in installments at specified times or at a specified date, does not have a right to compel the creditor to accept prepayment." *Promenade Towers Mut. Hous. Corp. v. Metro. Life Ins. Co.* (1991), 324 Md. 588, 592, 597 A.2d 1377, citing 4 American Law of Property (1952) 381, Section 16.161; 3 R. Powell, The Law of Peal Property (1979) 696.12, Paragraph 457; and 4 Williston on Contracts (3 Ed.Jaeger 1972) 768, Section 1694A. Mutuality and freedom of contract are the primary legal philosophies supporting the majority rule. *Latimer v. Grundy Cty. Natl. Bank* (1993), 239 Ill.App.3d 1000, 1002, 180 Ill.Dec. 400, 607 N.E.2d 294. Courts have held that the mortgagor should not have the right to prepay when the creditor does not have the reciprocal right to accelerate or call the loan. Id. "A creditor can no more be compelled to accept payments on a contract before, by the terms thereof, they are due, than can a debtor be compelled to make such payments before they are due. The time of payment fixed by the terms of a pecuniary obligation is a material provision, and each party has the right to stand on the letter of the agreement and perform accordingly." *Young v. Sodaro* (1995), 193 W.Va. 304, 308, 456 S.E.2d 31, citing *Kruse v. Planer* (Minn.1979), 288 N.W.2d 12, 14.

---

**2.** For a detailed listing of jurisdictions that have applied the majority rule, please see *Promenade Towers Mut. Hous. Corp. v. Metro. Life Ins. Co.* (1991), 324 Md. 588, 597 A.2d 1377.

Moreover, to permit prepayment when the right was not reserved is a unilateral change in the contractual terms, which is unprincipled contract law. Id.

{¶ 14} The majority rule also takes into account economic considerations. A land installment contract is often an investment instrument for the seller. To grant the right to prepay when a land installment contract is silent "may cause economic hardships upon the lender, 'not the least of which includes the loss of the bargained-for-rate of return, an increased tax burden, unanticipated costs occasioned by the need to reinvest the principal, and for those creditors anxious to ensure regular payments not unlike an annuity, it undoes the mortgagee's purpose in making the loan.'" *Young,* supra, quoting *In re Arthur v. Burkich* (1987), 131 A.D.2d 105, 520 N.Y.S.2d 638.

{¶ 15} In contrast, the minority rule[3] presumes a right to prepayment where the land installment contract is silent. *Mahoney* at 65, 468 A.2d 458. Courts that follow the minority rule find the more dominant policy to be the free alienability of land "since the fundamental purpose of the mortgage note in most instances is to secure a debt incurred in the purchase of land from which the debt arises rather than to secure investment income for the mortgagee." Id. Additionally, the courts reason that the presumption of a prepayment clause does not work a hardship upon the creditor, as a clause could be included denying the mortgagor the right to prepayment. Id. Thus, the mortgagor is on notice that he will, in all likelihood, be prevented from selling the property for the duration of the land installment contract. Id.

{¶ 16} Upon examination of the philosophical bases for both points of view, we find the majority rule to be more compelling and in accord with Ohio common-law principles. Therefore, we hold, absent statutory authority or contractual language to the contrary, plaintiff does not have the right to prepay the contract prior to the date of maturity.

{¶ 17} The parties have not cited any Ohio statutes that resolve this issue, and we have found none. Therefore, the question is whether the contract contains language permitting plaintiff to prepay the outstanding principal and accrued interest.

{¶ 18} Plaintiff argues that the phrase "or more" in the payment clause provides an express provision providing for payments in excess of the monthly amount recited in the contract. Plaintiff contends that the plain and ordinary meaning of these words is unequivocal and permits prepayment. In support,

---

3. Some jurisdictions that have applied the minority rule are North Carolina, *Hatcher v. Rose* (1991), 329 N.C. 626, 407 S.E.2d 172; Missouri, *Skyles v. Burge* (Mo.App.1990), 789 S.W.2d 116; Louisiana, *Spillman v. Spillman* (La.App.1987), 509 So.2d 442; and Pennsylvania, *Mahoney v. Furches* (1983), 503 Pa. 60, 468 A.2d 458.

plaintiff relies upon *Smith v. Renz* (1954), 122 Cal.App.2d 535, 265 P.2d 160. Additionally, plaintiff asserts that the interest clause reflects the parties' intent to allow payments greater than the stated monthly payment. To conclude otherwise, plaintiff argues, renders the interest clause superfluous.

{¶ 19} In response, defendant maintains that prepayment is not allowed as there is no express provision in the contract granting plaintiff the right. Further, defendant argues that plaintiff's interpretation of "or more" to allow for payments in excess of or greater than the monthly amount in the contract is mistaken. Instead, defendant asserts, when the phrase "or more" is read in a manner consistent with the other terms in the payment clause, it refers to the larger, final payment on the amortization schedule. Additionally, defendant contends that plaintiff's reliance upon *Smith* is misplaced.

{¶ 20} Written contract construction is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. The purpose of contract construction is to effectuate the intent of the parties. *Skivolocki v. East Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. "[T]he intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Accordingly, when contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent which is not expressed in the clear language used by parties. *Alexander,* supra, 53 Ohio St.3d at 246, 7 O.O.3d 403, 374 N.E.2d 146, citing *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 148 N.E. 393, paragraph one of the syllabus. The test for determining whether contract terms are ambiguous is set forth in *Alexander,* supra, paragraph two of the syllabus: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." If the written instrument is unambiguous on its face, parol evidence will not be considered in an attempt to show such an ambiguity. *Shifrin,* supra, 64 Ohio St.3d at 638, 597 N.E.2d 499, citing *Stony's Trucking Co. v. Pub. Util. Comm.* (1972), 32 Ohio St.2d 139, 142, 61 O.O.2d 388, 290 N.E.2d 565.

{¶ 21} Giving the terms of the payment clause their ordinary meaning, the payment clause indicates unambiguously the intent of the parties to not allow prepayment of the outstanding principal and accrued interest. A careful reading of the payment clause reveals that the phrase "or more" refers to the final monthly payment of $4,432.33, due on April 1, 2013. First, the parties agreed that the payment price would be paid in 180 payments, commencing on May 1,

1998. Therefore, there was an express intent by the parties that the purchase price would be paid in 180 payments, no more, no less. Second, the payment clause specifically refers to the fact that the 180 payments are to be paid in accordance with the amortization schedule attached to the contract as Exhibit B. Again, this is an express intent by the parties to pay the purchase price in 180 payments, 179 of which are in the amount of $3,653.66 and one in the amount of $4,432.33.

{¶ 22} To find as plaintiff desires would result in a meaning contrary to the meaning clearly evidenced from the overall content of the payment clause. Plaintiff's interpretation renders pointless the contract term of 180 payments and the incorporated amortization schedule. "In matters of construction, it is the duty of this court to give effect to the words used, *not to delete words used or to insert words not used.*" (Emphasis sic.) *Cleveland Elec. Illum. Co. v. Cleveland* (1988), 37 Ohio St.3d 50, 53, 524 N.E.2d 441, citing *Columbus–Suburban Coach Lines v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8. We must give effect to the terms used in the contract. In so doing, we find that the phrase "or more" clearly refers to the final payment of $4,432.33. Thus, the contract is devoid of any contractual language that expressly provides for plaintiff to prepay the outstanding principal and accrued interest. Accordingly, pursuant to our holding above, plaintiff does not have the right to prepay the contract.

{¶ 23} Contrary to plaintiff's assertion, the interest clause does not alter this conclusion. The interest clause is necessary, even when the amortization schedule is incorporated by reference, in the event that plaintiff fails to make a scheduled payment or tenders less than the required monthly payment. If either event occurred, the principal and interest would not continue to follow the amortization schedule. This conclusion is supported by the fact that the interest clause also establishes when a monthly payment is late and the late fee that will be charged. Therefore, as the amortization schedule was incorporated by reference into the contract, the interest clause was necessary to cover the ramifications of missed or partial payments.

{¶ 24} Finally, plaintiff's reliance upon *Smith* is misplaced under the facts presented and does not alter our construction of the contract. In *Smith*, the stockholders, officers, and directors in the Hotel Corporation of America (collectively, "HCA") executed an installment note in June 1947, with Walter Renz, whereby HCA agreed to pay $148,000. The terms required repayment in installments of $500 "*or more* on the first day of each and every month, beginning on the first day of July, 1952, and continuing until said principal and interest have been paid." (Emphasis added.) *Smith,* supra, 122 Cal.App.2d at 536, 265 P.2d 160. In September 1947, Mr. Renz received a payment in the amount of $23,500

on the installment note. The issue before the *Smith* court was how an advance payment was to be applied on the principal amount of an installment note. Id.

{¶ 25} Mr. Renz argued that the advance payment should be applied to the last installment and not to the first installments. Alternatively, Mr. Renz argued that the advance payment could not extend beyond the first installment, thus leaving all the subsequent payments to come due until the principal sum was paid. The *Smith* court concluded that the intent of the parties was that the $23,500 must be considered an advance payment on the first installment and had no impact on the remaining monthly payments except to lessen the principal sum by that amount and reduce the number of installments. Id. at 540, 265 P.2d 160.

{¶ 26} The rationale applied by the *Smith* court is inapplicable here for a number of reasons. First, the issue before the *Smith* court was where to apply the advance payment. It was not whether the contractual terms permitted a payment of more than the stated monthly payment, which is the issue before us. Second, the contract language is substantially different. In *Smith,* there was no reference to a specific number of payments. Additionally, there was no incorporated amortization schedule setting forth the amount of each of the payments. Finally, the note at issue in *Smith* was a promissory note. It was not a land installment contract. Thus, the *Smith* court was not faced with the split of authority discussed above with respect to the land installment contracts.

{¶ 27} In conclusion, we find that the policies advanced by the majority rule are in conformity with Ohio common-law principles. Therefore, absent statutory authority or a contractual provision to the contrary, there is no right to prepay a land installment contract. The contract executed by plaintiff and defendant does not contain a contractual provision that permits plaintiff to prepay.

{¶ 28} Therefore, plaintiff's sole assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

PEGGY BRYANT and LAZARUS, JJ., concur.