DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, Bay Coast Properties, Inc., appeals from a judgment entered by the Huron County Court of Common Pleas in favor of appellee, National City Bank. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Bay Coast is a real estate holding company co-owned by James E. Seitz, Jr. and Daniel L. Stewart. Its business involves the acquisition of apartment buildings, manufacturing plants and other commercial properties for leasing to third parties. All of Bay Coast's acquisitions are financed with open lines of credit and purchase money loans.
 {¶ 3} In December 1998 or January 1999, Bay Coast approached National City vice president Dennis Miller about consolidating a series of loans that it had previously executed with National City. On April 1, 1999, Bay Coast entered into an agreement with National City for a loan in the amount of $2,918,873. The agreement was memorialized in three bundled documents: a promissory note; a fixed rate hold agreement; and a loan amortization and payment schedule. According to Bay Coast, it was mutually understood that the loan was to be payable at five years without a penalty. But Bay Coast representatives Stewart and Seitz admit that they noticed at signing that the duration of the loan as set forth in the promissory note appeared to be ten years. According to affidavit testimony by Stewart and Seitz, Miller reassured them about this apparent discrepancy by stating that the loan was, in fact, a five-year loan, but if Bay Coast was unable to repay the loan in five years, it could extend the time for repayment to 2009. Miller, for his part, testified that the loan was a ten-year loan, with a fixed rate of 7.25 percent for the first five years, subject to adjustment after that time. He contends that the ten-year loan was negotiated after National City indicated its inability to offer Bay Coast its requested rate of a fixed 7.25 percent on a five-year loan.
 {¶ 4} Bay Coast made loan payments from May 1999 to March 2004 in accordance with the amortization schedule. In April 2004, Bay Coast paid the balance of the loan together with a prepayment premium in the amount of $256,447.73.
 {¶ 5} On July 14, 2004, Bay Coast filed a complaint alleging that National City, in charging the prepayment premium, had breached the written loan agreement. The parties filed cross motions for summary judgment. On June 17, 2004, the trial court denied Bay Coast's motion, granted National City's motion, and entered judgment in favor of National City. Bay Coast timely appealed the entry of judgment, raising the following assignments of error:
 {¶ 6} I. "THE TRIAL COURT ERRED IN FINDING A BINDING CONTRACT WHEN THERE WAS NO MEETING OF THE MINDS AS TO THE DURATION OF THE CONTRACT OR THE PENALTY PROVISION AND THEREBY DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 7} II. "THE TRIAL COURT ERRED IN NOT INTERPRETING THE DOCUMENTS DRAFTED BY THE DEFENDANT APPELLEE AGAINST THE DEFENDANT APPELLEE AND THEREBY DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 8} III. "THE TRIAL COURT ERRED IN NOT FINDING THE FAIR AND CUSTOMARY INTERPRETATION OF THE CONTRACT AND THEREBY DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 9} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Civ.R. 56(C) provides:
 {¶ 10} "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as considered in this rule. * * *"
 {¶ 11} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion adverse to the nonmoving party. Ryberg v. Allstate Ins. Co.
(July 12, 2001), 10th Dist. No. 00AP-1243, citing Tokles Son,Inc. v. Midwestern Indemnity Co. (1992), 65 Ohio St.3d 621, 629.
 {¶ 12} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the non-moving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 280, 292. Once this burden has been satisfied, the non-moving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.
 {¶ 13} Because the assignments of error present overlapping issues concerning the loan contract, we will consider them together in this analysis. The construction of a written contract is a matter of law to be reviewed de novo by an appellate court.Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311, 313. The purpose of contract construction is to effectuate the intent of the parties. Skivolocki v. E. Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins. Co.
(1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 14} As stated by the Tenth District Court of Appeals inDiMarco v. Shay, 154 Ohio App.3d 141, 2003-Ohio-4685, "[W]hen contract terms are clear and unambiguous, courts will not, in effect, create a new contract by finding an intent which is not expressed in the clear language used by parties." Id., citingAlexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, at 246. Id. at ¶ 20. And where the written instrument is unambiguous on its face, parol evidence cannot be considered for the purpose of showing ambiguity. Id. (Citations omitted.)
 {¶ 15} On the other hand, where the contract terms are ambiguous, the ambiguity will be construed most strongly against the party preparing it or employing the words from which doubt arises. Ceroni v. Suffield United Church of Christ, 11th Dist. No. 2002-P-0103, 2003-Ohio-5707, at ¶ 26. The test for determining whether contract terms are ambiguous is set forth inAlexander, supra: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Id., at paragraph two of the syllabus.
 {¶ 16} In the instant case, the promissory note expressly provides that from April 1, 1999 to April 10, 2009, Bay Coast was required to pay monthly installments of principal and interest. For the first five years of the loan, Bay Coast was to pay interest calculated at a rate of 7.25 percent per annum. But at the conclusion of the first five years of the loan, National City had the right to change the interest rate from the fixed rate to the then-existing prime rate of interest plus one and one-half percent.
 {¶ 17} The note further provides that if National City elected to cancel the fixed loan rate and convert the interest rate to the prime loan rate, Bay Coast could either: (1) elect a different fixed rate, known as the borrower fixed rate; or (2) prepay the note in whole or in part without premium or penalty. In addition, the note provides that if one of the two fixed rates was in effect, Bay Coast could still make a full prepayment of the remaining principal, buy only if it paid, concurrently with that prepayment, a prepayment premium.
 {¶ 18} The fixed rate hold agreement relevantly provides that "the fixed rate of interest applicable to the unpaid principal balance due on the Loan shall be: 7.25% percent per annum during the period from and including April 1, 1999 through the entire remaining term of the Loan; provided that National City shall have the right (exercisable upon the delivery of timely and proper notification to Customer) to elect to cancel such fixed rate on the following dates (each a `Specified Date'): April 1, 2004 * * *" (Emphasis in original.)
 {¶ 19} The amortization schedule that accompanied the note deals only with the first five years of the loan, and provides that Bay Coast would be responsible for 59 monthly payments of $23,305.12. In the line containing data for payment number 60, with a theoretical payment date of April 10, 2004, the schedule reveals that the remaining sum due on the loan was $2,560,436.68.
 {¶ 20} It is undisputed in this case that National City never cancelled the initial fixed loan rate, and that this initial fixed rate remained in effect at all relevant times. Thus, under the express terms of the promissory note, because Bay Coast prepaid the remaining principal while the fixed loan rate remained in effect, it was obligated to pay, in addition to the prepaid principal, a prepayment premium.
 {¶ 21} Bay Coast argues against this conclusion, stating that various terms in the contract are ambiguous and, therefore, should be construed in favor of Bay Coast and against National City. Specifically, Bay Coast points to the language contained in the second paragraph of the promissory note, wherein it is stated that "* * * Borrower shall make payments of the principal and interest per the [amortization] Schedule attached hereto as Exhibit B." Bay Coast argues that, pursuant to the referenced table, it was to make 59 monthly payments of $23,305.12, and a final, 60th-month, payment of $2,560,436.68.
 {¶ 22} In order to properly evaluate this argument, we must review the cited language in the context in which it was written. To this end, we review the following portion of the promissory note, wherein it is relevantly provided: "From April 1, 1999 to April 10, 2009, Borrower shall pay Bank monthly installments of principal plus accrued interest on the tenth day of each month, commencing May 10, 1999. Interest applicable to the principal balance due Bank hereunder shall be calculated at a rate of seven and twenty-five hundredths percent (7.25%) per annum (the "Fixed Loan Rate") as per the Fixed Rate Hold Agreement between the parties attached hereto as Exhibit A, and Borrower shall make payments of principal and interest per the Schedule attached hereto as Exhibit B.
 {¶ 23} "On April 7, 2004, (the "Adjustment Date"), Bank may cancel the Fixed Loan Rate effective as of April 13, 2004 and calculate interest on the then principal balance of this Note at a per annum rate equal to the sum of one and one-half percent (11-/2%) in excess of the Bank's Prime Rate (hereinafter defined) (the "Prime Loan Rate") for the remainder of the term of the Note, and the principal balance hereof shall be amortized over the then remaining term of the Note. If Bank does not cancel the Fixed Loan Rate, Bank's right to do so shall lapse and be waived, and the unpaid principal of the Note shall continue to bear interest at the Fixed Loan Rate unless otherwise changed pursuant hereto."
 {¶ 24} A reading of the paragraph in its entirety makes clear that the fixed rate hold agreement and the amortization schedule to which the sentence refers apply only to the fixed loan rate of 7.25 percent. And by their terms, the fixed rate hold agreement and the amortization schedule apply only to the first five years of the loan, during the limited period in which the fixed loan rate of 7.25 percent is necessarily, and unalterably, in effect. Bay Coast's contention that the amortization schedule controlled the payments and terms of the loan conflicts with the express terms of the promissory note. We do not believe that such a strained and illogical reading of the contract terms demonstrates ambiguity in its terms with respect to either the duration of the contract or the fact that a prepayment penalty would apply in the event of an early payoff.
 {¶ 25} Bay Coast next argues, apparently also in support of its claim of ambiguity, that the provision setting out the method of calculating the prepayment premium is "non comprehensible to the lay person." The provision addressing calculation of the prepayment premium is set forth as follows: "Concurrently with the prepayment, Borrower shall pay Bank a prepayment premium which shall be computed on the principal amount prepaid, for the remainder of the then applicable Rate period as of the date of prepayment (based upon a 360-day year but calculated on actual days), at a rate per annum equal to the excess, if any, of Bank's Cost of Funds on the date hereof over the Reinvestment Rate at the time of the payment (discounted to the present value in accordance with standard financial practice at a rate equal to the Reinvestment Rate at the time of the payment.)" The terms "Cost of Funds" and "Reinvestment Rate" are defined in the note, and the note additionally provides that the "Cost of Funds" will be "quoted to the Borrower upon request."
 {¶ 26} Like the trial court, we find that, although the manner of calculating the prepayment penalty is certainly complex, it is clearly set out in the note document and is in no way ambiguous. See Value City, Inc. v. Integrity Ins. Co.
(1986), 30 Ohio App.3d 274, 279 (holding that "[a] contract is not ambiguous merely because it is complex or difficult to read as a whole").
 {¶ 27} The loan contract, read in its entirety, is clear, consistent, and unambiguous on its face. Thus, the trial court properly refused to consider extrinsic evidence to aid in its interpretation of that contract.
 {¶ 28} As indicated above, the express terms of the promissory note required that Bay Coast pay a prepayment premium when it prepaid the remaining principal while the fixed loan rate remained in effect. National City, in collecting the premium, did not breach the promissory note; it merely enforced its rights under the contract.
 {¶ 29} For all of the foregoing reasons, Bay Coast's first, second, and third assignments of error are found not well-taken. Accordingly, the judgment of the Huron County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Huron County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Skow, J.M. Parish, J. concur.