PLANNED PETHOOD PLUS,
INC., Plaintiff–Appellant,

v.

KEYCORP, INC., d/b/a/ KeyBank National Association, d/b/a KeyBank, Defendant–Appellee.

No. 09CA0459.

Colorado Court of Appeals,
Div. I.

Jan. 21, 2010.

David Carroll, Denver, Colorado, for Plaintiff–Appellant.

Brown, Berardini & Dunning, P.C., Brian J. Berardini, Marie E. Drake, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge BOORAS.

Plaintiff, Planned Pethood Plus, Inc. (Pethood), appeals the summary judgment entered in favor of defendant, KeyCorp, Inc. (Keybank), denying Pethood's claim for recovery of a prepayment penalty paid to Keybank to obtain release of a deed of trust. We affirm.

## I. Factual Background

Although the parties disagree on certain factual allegations made by Pethood, all relevant facts are undisputed. Pethood is a veterinary clinic owned by two veterinarians. It obtained a commercial loan from Keybank in the amount of $389,000 at a fixed interest rate of 8.3% per annum for a term of ten years. The loan was secured by real property owned by the veterinarians, who also executed personal guarantees of the loan.

The promissory note contained a clause, prominently displayed near the middle of the first page, allowing Pethood to partially or fully prepay the loan and entitling Keybank to a prepayment penalty if Pethood chose to do so. The relevant portions of this clause are as follows:

> At the time and with respect to each partial or total prepayment of the outstanding principal amount of this Note, Borrower shall pay to Lender an amount equal to (a) the principal amount of the prepayment times ... the number of years in the original term of the Note minus the number of years the Note has been outstanding ... times ... 0.0125 (one and one quarter percent).

One of the veterinarians admits that he did not read the note, while the other claims he read the note but did not understand it. Nevertheless, both of them signed the note, thereby acknowledging that they "read and understood all of the terms of [the] note." The veterinarians admit to borrowing money to finance Pethood at least four times, and in at least two of these loans, prepayment penalties were assessed.

Pethood timely made all payments on the loan until it elected to fully prepay the principal amount eight years and eight months early. Keybank had not accelerated the loan due to default or bankruptcy, and Pethood does not allege that it prepaid the loan at Keybank's urging. Keybank invoked the prepayment penalty in the promissory note,

and Pethood paid Keybank a penalty of $40,525.72 to obtain release of the deed of trust. Pethood's expert report stated that this amount represented a penalty of 10.72% of the principal balance.

Pethood filed suit, seeking recovery of the prepayment penalty, plus interest. On cross-motions for summary judgment, the district court entered judgment in favor of Keybank and against Pethood. This appeal followed.

## II. Standard of Review

We review de novo the district court's summary judgment ruling. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.,* 901 P.2d 1251, 1256 (Colo.1995). Summary judgment is appropriate only if the pleadings, affidavits, depositions, or admissions in the record establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *see also Nelson v. Gas Research Inst.,* 121 P.3d 340, 343 (Colo.App.2005).

## III. Analysis

■■■ As an initial matter, we reject Pethood's contention that summary judgment in favor of Keybank was inappropriate because there remains one genuine issue of material fact: whether the prepayment penalty is enforceable. Whether a contract term is enforceable is a question of law, not fact. *Cornerstone Group XXII, L.L.C. v. Wheat Ridge Urban Renewal Authority,* 151 P.3d 601, 605 (Colo.App.2006), *rev'd on other grounds,* 176 P.3d 737 (Colo.2007). Thus, whether the prepayment penalty is enforceable is a question of law. There being no material facts in dispute, we conclude that Keybank was entitled to judgment as a matter of law.

### A. Liquidated Damages

Pethood argues that the prepayment penalty provision invoked by Keybank should be viewed as a liquidated damages clause, and that it is unenforceable because it does not meet the requirements of a valid liquidated damages clause. Specifically, Pethood contends that the amount of the prepayment penalty is unreasonable in light of Keybank's anticipated or actual loss, that it is not diffi-

cult to determine the amount of the actual loss, and that the prepayment penalty is therefore void as a penalty. We disagree.

Prepayment penalties of the sort invoked by Keybank have seldom been the subject of litigation in Colorado. Whether they are properly viewed as a form of liquidated damages is an issue of first impression.

■■■ Where there is a breach of a contract, liquidated damages provisions must be "reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss." *Klinger v. Adams County School Dist. No. 50,* 130 P.3d 1027, 1034 (Colo.2006) (quoting Restatement (Second) of Contracts § 356(1) (1981)). A liquidated damages provision must not be "unreasonably large for the expected loss from a breach of contract," *Klinger,* 130 P.3d at 1034, or "unreasonably disproportionate to the expected loss on the very breach that did occur and was sued upon." *Bd. of County Comm'rs v. City & County of Denver,* 40 P.3d 25, 32 (Colo.App.2001). In an action for breach of contract, a liquidated damages provision that fails the above tests amounts to an unenforceable penalty. *DBA Enterprises, Inc. v. Findlay,* 923 P.2d 298, 303 (Colo.App. 1996).

■■■ Accordingly, liquidated damages are a remedy for breach of contract. Even if Pethood is correct that the prepayment penalty is unreasonable, it is not an unenforceable penalty under the law of liquidated damages because there was no breach of contract here. Pethood made all payments on time, and did not otherwise default on the loan. It exercised its right under the note to prepay the loan principal, thereby triggering Keybank's right to invoke the prepayment penalty.

■■■ Put a different way, the note required Keybank to accept prepayment and release the deed of trust if Pethood tendered the outstanding principal and the prepayment penalty. Pethood did so, and thus fully performed under the note. Where a borrower exercises an alternative form of performance by invoking a prepayment privilege, the law of liquidated damages is inapplicable. *See*

*River East Plaza, L.L.C. v. Variable Annuity Life Ins. Co.,* 498 F.3d 718 (7th Cir.2007) (analyzing prepayment penalty as alternative performance rather than liquidated damages); *Ridgley v. Topa Thrift & Loan Ass'n,* 17 Cal.4th 970, 978, 73 Cal.Rptr.2d 378, 953 P.2d 484, 488–89 (1998) ("[prepayment penalties] are generally considered valid provisions for alternative performance, rather than penalties or liquidated damages for breach"); *Carlyle Apartments Joint Venture v. AIG Life Ins. Co.,* 333 Md. 265, 270, 635 A.2d 366, 368 (1994) (holding that performance by prepayment does not "engage the gears" of the law of liquidated damages).

Prepayment penalties arise from the common law view that a borrower may not compel a lender to accept early payment unless there is specific provision for prepayment in the contract. *See Promenade Towers Mut. Housing Corp. v. Metropolitan Life Ins. Co.,* 324 Md. 588, 597 A.2d 1377, 1384–85 (1991) (at common law, a mortgagor or grantor under a deed of trust payable at a date in the future does not have a right to prepay, absent provision for prepayment in the contract); *DiMarco v. Shay,* 154 Ohio App.3d 141, 146, 796 N.E.2d 572, 575–76 (2003) (holding in accord with common law principles that mortgagor does not have the right to prepay a contract prior to the date of maturity absent statutory authority or contractual language to the contrary); *see also* Annotation, *Right of Purchaser Under Land Contract to Anticipate Time of Payment Fixed by Contract,* 17 A.L.R. 866 (1922).

▮ Colorado courts share this view. A debtor has no right to obtain release of a deed of trust by tendering the principal balance before it is due unless the contract so provides. *See Micheli v. Taylor,* 114 Colo. 258, 262, 159 P.2d 912, 914 (1945) (provision in land sale contract allowing for payment on or before specified date permits immediate payment); *Kirk v. Kitchens,* 49 P.3d 1189, 1193 (Colo.App.2002) ("note holder may refuse an early tender of the principal balance remaining due"); *Carpenter v. Winn,* 39 Colo.App. 238, 239, 566 P.2d 370, 371 (1977) (purchaser under land installment contract cannot compel vendor to accept early tender).

▮▮ Of course, a lender may waive this right to refuse early tender, but any associated prepayment penalty must be specifically provided in the contract. *Kirk,* 49 P.3d at 1193 (citing *Burks v. Verschuur,* 35 Colo. App. 121, 532 P.2d 757 (1974)). Despite carrying the designation "penalty," these provisions, also known as prepayment fees or premiums, "serve a valid purpose in compensating ... for the anticipated interest a lender will not receive if a loan is paid off prematurely." *Kirk,* 49 P.3d at 1193 (citing *In re LHD Realty Corp.,* 726 F.2d 327 (7th Cir. 1984)). Prepayment penalties also compensate the lender for the payments no longer being made in regular installments. Receiving payments according to a regular schedule may benefit the lender for tax and investment reasons. *Carpenter,* 39 Colo.App. at 239–40, 566 P.2d at 371.

▮ Thus, prepayment provisions simply grant borrowers the right to prepay the loan in exchange for paying the lender a fee. Because the borrower retains control over the manner of performance, prepayment with a penalty is an alternative manner of performance, not liquidated damages. *Great Plains Real Estate Development, L.L. C. v. Union Central Life Ins. Co.,* 536 F.3d 939, 945 (8th Cir.2008). Far from liquidated damages, these fees are bargained-for consideration for a contractual right.

Pethood relies upon *In re A.J. Lane & Co.,* 113 B.R. 821 (Bankr.D.Mass.1990), to bolster its characterization of prepayment penalties as liquidated damages. *Lane* concerned section 506(b) of the federal Bankruptcy Code, which provides that a creditor may receive reasonable charges provided for in a contract. *See* 11 U.S.C. § 506(b). The charges at issue were prepayment penalties, which the court concluded were unreasonable. *Lane,* 113 B.R. at 830. In doing so, it evaluated the prepayment penalties as a form of liquidated damages. *Id.* at 828–30.

We find *Lane* distinguishable from the facts of the present case. The *Lane* court grounded its conclusion that the prepayment penalties at issue were liquidated damages on the view that prepayment is a breach of contract. *Id.* at 827. Here, the parties

agree that no breach occurred. Furthermore, *Lane* involved acceleration of the balance due as a result of the invocation of bankruptcy protection. Here, Pethood prepaid the principal balance voluntarily. There was no acceleration due to bankruptcy or default.

Pethood obtained from Keybank a commercial loan that was secured by real property. Keybank invoked a provision in the loan agreement expressly providing for a prepayment penalty when Pethood voluntarily tendered the entire principal balance before it was due. We conclude that a prepayment penalty is not a type of liquidated damages in these circumstances. Accordingly, even if Pethood is correct that the prepayment penalty here is unreasonable, it is not void as a liquidated damages clause that amounts to a penalty because it is not based on a breach.

## B. Unconscionability

Pethood next contends that, whether or not the prepayment penalty is viewed as liquidated damages, the prepayment penalty is nevertheless void on equitable grounds because it is unconscionable. We disagree.

■ Prepayment penalties are generally permitted in Colorado except in consumer loans and in certain residential mortgages, *see* §§ 5-2-210, 5-3.5-102(1)(g), C.R.S.2009. However, a prepayment penalty might be so large, or a lender's behavior so egregious, as to render the enforcement of a prepayment penalty unconscionable. In such a case, a court certainly has the equitable power to refuse to enforce the offensive prepayment penalty. *See Lincoln General Ins. Co. v. Bailey,* 224 P.3d 336, 341 (Colo.App. 2009) ("[c]ourts will not enforce an unconscionable contract"). A prepayment penalty could be unenforceable if it were "so unconscionable that no decent, fair[-]minded person would view the ensuing result without being possessed of a profound sense of injustice." *Id.* (quoting *Univ. Hills Beauty Acad., Inc. v. Mountain States Tel. & Tel. Co.,* 38 Colo. App. 194, 197, 554 P.2d 723, 726 (1976)).

■ We also observe, however, that courts have upheld the enforcement of prepayment penalties far larger than the one at issue here. *See In re Financial Center Associates of East Meadow, L.P.,* 140 B.R. 829 (Bankr.E.D.N.Y.1992) (enforcing a fee of 24.9% of amount prepaid); *Williams v. Fassler,* 110 Cal.App.3d 7, 167 Cal.Rptr. 545 (1980) (enforcing a fee of 50% of amount prepaid). Pethood paid $40,525.72 pursuant to the prepayment penalty clause. Pethood's expert report stated that this amount represented a 10.72% penalty.

By any measure, the prepayment penalty here is not unconscionable. In addition to the relatively small amount of the penalty, the prepayment penalty clause was prominently displayed near the middle of the first page of the promissory note, and the note itself was only two pages long. One of the veterinarians admitted that he did not read the note, while the other claimed he read the note but did not understand it. In any event, they both signed the note, thereby acknowledging, as spelled out directly above their signatures, that they "read and understood all of the terms of [the] note." In addition, the veterinarians were not novice borrowers. They had previously negotiated at least four commercial loans, at least two of which contained a prepayment penalty clause.

When we consider the enforcement of the prepayment penalty here, we are not "possessed of a profound sense of injustice." *Lincoln General,* 224 P.3d at 341. Under these circumstances, no reasonable person could conclude that the prepayment penalty was so unfair as to be unconscionable.

## IV. Conclusion

All of Pethood's contentions that the prepayment penalty is unenforceable fail. Pethood does not argue that Keybank invoked the prepayment penalty in a manner inconsistent with the terms of the note or that it improperly calculated the amount of the penalty. Nor does Pethood argue that the prepayment penalty provision is ambiguous in any way. There being no impediments to the enforcement of the prepayment penalty, Keybank is entitled to judgment as a matter of law. *USI Properties East, Inc. v. Simpson,* 938 P.2d 168, 173 (Colo.1997) ("courts ... must enforce an unambiguous

contract in accordance with the plain and ordinary meaning of its terms").

The district court's judgment is affirmed.

Judge TAUBMAN and Judge DAILEY concur.