Sean C. Gallagher, Judge,
dissenting.
{¶ 33} I respectfully dissent from the majority opinion. Rather than enforcing the clear terms of a contractual agreement between property owners, the majority applies a constrained interpretation to uphold the trial court’s decision.
{¶ 34} I believe that the trial court’s interpretation of the required conditions for the granting of an access easement under the 1994 ECR is contrary to the clear language expressed by the parties. Further, the trial court impermissibly inserted terms into the unambiguous agreement. While Wal-Mart may be a superstore, it does not possess rights that are superior to those of other property owners under the 1994 ECR.
{¶ 35} Pursuant to the 1994 ECR, Wal-Mart could not grant the requested easement unless the terms of Section 5.1 of the development agreement were met. The first condition requires that owners of properties in the southern section execute and deliver a “mutually acceptable easement agreement” to one of several alternatives. The first two alternatives were not satisfied as the easement agreement was not delivered to the “developer” of the northern section or to the “subsequent owners” of the northern section, which is written in the plural. Thus, in order for the first condition to have been satisfied, a “mutually acceptable” easement agreement must have been delivered to “any affected portions” of the northern section.
{¶ 36} The majority acknowledges that “the word ‘any’ may mean ‘all,’ ‘some,’ or ‘one,’ depending on the context.” In re Wyrock (June 5,1980), Cuyahoga App. Nos. 41305 and 41306, 1980 WL 354976. I do not believe that under the context written, it can be construed to mean “one” or, in this case, “the most directly affected portion.”
{¶ 37} Indeed, the term “any” is used to qualify “affected portions” of the northern section, which is written in the plural form. The easement is for the *382 extension of Ring Road to connect the northern and the southern sections of the Triangle. Logically, the parties would have intended that any properties in the northern section that would be affected by the easement be provided with a mutually acceptable easement agreement. From the context written, it is apparent that the word “any” is an inclusive term and that the phrase “any affected portions” encompasses all portions of the northern section that would be affected by the extension of the internal roadway to the southern section of the Triangle.
{¶ 38} This construction does not render the preceding alternative of “subsequent owners” meaningless, because that alternative would include Outlots A and B in the northern section, which are not asserted to be “affected” by the Ring Road extension. Also, I do not find it to be determinative that the easement would physically exist on Wal-Mart’s property as the 1994 ECR creates and limits property rights for the granting of access easements. The clear and unambiguous language of the agreement does not provide the unilateral power to any one affected portion to grant an easement. Rather, a mutually acceptable easement agreement must be executed and delivered to any property in the northern section that would be affected by the extension of the internal roadway.
{¶ 39} The trial court found that “under Section 5.1 of the development agreement, Wal-Mart, as the most directly affected owner, had the right to grant the easement for the completion of the ring road.” (Emphasis added.) In doing so, the trial court impermissibly inserted terms into an unambiguous contract. “[A] court may not delete or add words to a contract when determining the parties’ rights and obligations under it.” Merz v. Motorists Mut. Ins. Co., Butler App. No. CA2006-08-203, 2007-Ohio-2293, 2007 WL 1394560, ¶ 54, citing DiMarco v. Shay, 154 Ohio App.3d 141, 2003-Ohio-4685, 796 N.E.2d 572. Moreover, a court “is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties.” Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 12.
{¶ 40} Accordingly, the trial court’s determination that Wal-Mart had the right to grant the easement as “the most directly affected” portion was inconsistent with the unambiguous language of Section 5.1. Ring Road is located on the Home Depot and Wal-Mart parcels in the northern section of the Triangle. Both parcels clearly would be affected by the extension of the internal roadway to the properties in the southern section of the Triangle. The owners of the southern section of the Triangle were required to execute and deliver a “mutually acceptable” agreement to Wal-Mart as well as HDSP and Home Depot for this alternative to be satisfied.
{¶ 41} The second condition requires a determination, in the reasonable judgment of “any affected portions,” that the use of the adjoining properties to *383 the south is not offensive or detrimental to its property. This provision clearly expresses an intent to encompass all portions of the northern section that would be affected by the extension of the internal roadway to the properties in the southern section of the Triangle. Indeed, it would be illogical to allow only one property in the northern section to exercise the judgment of other affected properties. Rather, “any affected portions” have the right to determine whether the use of the adjoining properties would be offensive or detrimental to their property.
{¶ 42} Because Home Depot is an affected property, HDSP and Home Depot had the right to determine, in their reasonable judgment, whether any use of the adjoining properties to the south is offensive or detrimental to their property. Wal-Mart could not exercise the judgment of Home Depot in this regard. Rather, HDSP and Home Depot had the right, in the first instance, to make a use determination under the agreement. Further, while Section 5.1 does not contain a use-restriction or anticompetition provision, this does not alter the conditions required for the granting of an easement under the 1994 ECR.
{¶ 43} The word “reasonable” is defined as “possessing good sound judgment.” Webster’s Third New International Dictionary (1986) 1892. “A decision is unreasonable if there is no sound reasoning process that would support that decision.” AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp. (1990), 50 Ohio St.3d 157, 161, 553 N.E.2d 597; see also Cedar Bay Const., Inc. v. Fremont (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202 (“Unreasonable” means “irrational”). The term “detrimental” has been defined as “causing detriment” and “harmful, damaging.” Webster’s Third New International Dictionary (1986) 617.
{¶ 44} The trial court found that the evidence established only speculative losses to Home Depot and that by completing Ring Road there is no offensive use. I agree that these factual determinations were supported by competent, credible evidence in the record. However, the trial court did not explicitly determine whether HDSP and Home Depot exercised their reasonable judgment. Instead, the court effectively allowed Wal-Mart, as “the most directly affected owner,” to make a unilateral determination to grant the easement.
{¶ 45} This is a declaratory-judgment action to determine the “rights, status, or other legal relations” of the parties under a contract. R.C. 2721.02(A) and 2721.03. Here, the issue is whether Wal-Mart had the legal right to grant the easement for the Ring Road extension pursuant to the 1994 ECR. The Lewanski parties, Lowe’s, and the city are not parties to that agreement.
{¶ 46} Under the plain and unambiguous terms of the 1994 ECR, Wal-Mart did not have the authority to grant an easement without compliance with the conditions of Section 5.1 of the 1994 development agreement. I would find that *384 those conditions could not be unilaterally satisfied by Wal-Mart, because Home Depot is included in the phrase “any affected portions.” Further, Section 2.1F of the 1994 ECR requires an amendment to the 1994 ECR to provide for the Ring Road extension upon satisfaction of the requisite conditions.
{¶ 47} Accordingly, I believe that the trial court erred in determining that Wal-Mart had the right to grant the easement under the terms of Section 5.1 of the 1994 development agreement and in determining that the 1994 ECR did not prohibit the grant of the easement. I would reverse the judgment of the trial court and enter a declaratory judgment in favor of HDSP and Home Depot. I would declare as follows: The 1994 ECR generally prohibits Wal-Mart from granting access easements for the benefit of properties outside the northern section of the Triangle; under the 1994 ECR, Wal-Mart agreed to comply with the terms of Section 5.1 of the 1994 development agreement and to amend the 1994 ECR to provide for the extension of Ring Road upon satisfaction of the requisite conditions; Home Depot is included in the meaning of the phrase “any affected portions” under Section 5.1; and pursuant to these provisions, Wal-Mart did not have the right to unilaterally grant the Lewanski-Wal-Mart Easement.