{¶ 1} Plaintiffs-appellants, Jamie Merz, Administrator of the Estate of James J. Merz, and others appeal a summary judgment rendered in favor of defendant-appellee, Motorists Mutual Insurance Company, with respect to appellants' breach of contract claim regarding *Page 2 
underinsured motorist benefits.[1]
 {¶ 2} The parties stipulated to the following facts for purposes of filing cross-motions for summary judgment on appellants' breach of contract claim:
 {¶ 3} "1. Decedent James J. Merz was a passenger in a vehicle owned and operated by William Parker at the time of an automobile accident with a vehicle owned and operated by Robert Centers on February 5, 2005.
 {¶ 4} "2. The February 5, 2005 accident occurred in Warren County, Ohio and was directly and proximately caused by the negligence of Robert Centers, and said negligence caused the death of James J. Merz.
 {¶ 5} "3. The tortfeasor, Robert Centers, was insured by State Farm at the time of the accident on February 5, 2005, under a policy of automobile insurance with said policy providing liability limits in the amount of $25,000 per person, and $50,000 per accident. On behalf of Mr. Centers, State Farm has paid its limits of $25,000 to the Estate of James J. Merz for the claim arising out of the February 5, 2005 accident.
 {¶ 6} "4. At the time of the February 5, 2005 accident, William Parker was insured by State Farm, under a policy of automobile insurance with said policy providing uninsured/underinsured motorist ("UM/UIM") limits in the amount of $100,000 per person, and $300,000 per accident.
 {¶ 7} "5. The UM/UIM limits in the amount of $100,000 per person provided by Mr. Parker's automobile policy was subject to a set off of $25,000 (amount paid on behalf of Mr. Centers) in accordance with the terms and conditions of the insurance policy and R.C. 3937.18(C) (effective 10-31-2001) and on August 25, 2005, State Farm paid $75,000 to the Estate of James J. Merz for the claim arising out of the February 5, 2005 accident. *Page 3 
 {¶ 8} "6. Attached [to the parties' joint stipulations] as Exhibit A is a true and accurate copy of Policy No. 5874-06-490440-04, as issued by Motorists Mutual Insurance Company to James J. Merz.
 {¶ 9} "7. The aforementioned policy of insurance issued by Defendant Motorists Mutual Insurance Company to James J. Merz was in full force and effect at the time of the accident on February 5, 2005 and provided UM/UIM coverage in the amount of $100,000 per person and $300,000 per accident."
 {¶ 10} On November 23, 2005, Jamie Merz, Administrator of the Estate of James J. Merz, filed an action in the Butler County Court of Common Pleas against Motorists Mutual Insurance Company, asserting a breach of contract claim and several "bad faith" claims.[2] On February 24, 2006, the trial court ordered bifurcation of the breach of contract claim from the bad faith claims.
 {¶ 11} On May 1, 2006, appellants moved for summary judgment, requesting a determination that they were entitled to UIM coverage under James J. Merz's automobile insurance policy with appellee. On that same day, appellee moved for partial summary judgment on appellants' breach of contract claim, arguing that since appellants had already received $100,000 in insurance coverage for the September 5, 2005 accident, they were not entitled to receive any UIM coverage from appellee because of the setoff provision in R.C. 3937.18(C) and the terms of the parties' policy. The parties submitted the matter for summary judgment based upon the joint stipulations set forth above.
 {¶ 12} On June 19, 2006, the trial court issued a decision (1) overruling appellants' motion for summary judgment, (2) sustaining appellee's motion for partial summary *Page 4 
judgment, and (3) dismissing appellants' breach of contract claim. Shortly thereafter, appellants dismissed their remaining claims for relief. On July 27, 2006, the trial court issued a judgment entry essentially incorporating the court's June 19th decision.
 {¶ 13} Appellants now appeal, raising two assignments of error. We shall address appellants' second assignment of error, first, in order to facilitate our analysis of the issues raised in this appeal
 {¶ 14} Assignment of Error No. 2:
 {¶ 15} "THE TRIAL COURT ERRED IN CONCLUDING THAT THE LIMITS OF UNDERINSURED MOTORIST COVERAGE IN APPELLEE'S INSURANCE POLICY ARE REDUCED BY AMOUNTS OF UNDERINSURED MOTORIST COVERAGE AVAILABLE TO APPELLANT UNDER ANOTHER INSURANCE POLICY."
 {¶ 16} Appellants argue that the trial court erred in finding that appellee was entitled to set off the $75,000 paid to appellants pursuant to the terms of Parker's policy with State Farm, from the $100,000 limit of UIM coverage in the parties' insurance policy. We disagree with this argument.
 {¶ 17} An appellate court reviews a grant of summary judgment de novo, and without deference to the trial court's ruling. Burgess v.Tackas (1998), 125 Ohio App.3d 294, 296. A court may grant summary judgment to the moving party only if that party demonstrates (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence submitted that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Civ. R. 56(C);Welco Industries, Inc. v. Applied Cos., 67 Ohio St.3d 344, 346,1993-Ohio-191.
 {¶ 18} As the trial court noted in its decision, the coverage dispute in this case largely centers on the applicability of the "setoff" and "anti-stacking" provisions in R.C. 3937.18 and *Page 5 
the parties' insurance policy.
 {¶ 19} R.C. 3937.18(C) contains a setoff provision, which states in pertinent part:
 {¶ 20} "If underinsured motorist coverage is included in a policy of insurance, the underinsured motorist coverage shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the underinsured motorist coverage. Underinsured motorist coverage in this state is not and shall not be excess coverage to other applicable liability coverages, and shall only provide the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable to the insured were uninsured at the time of the accident. The policy limits of the underinsuredmotorist coverage shall be reduced by those amounts available forpayment under all applicable bodily injury liability bonds and insurancepolicies covering persons liable to the insured." (Emphasis added.)
 {¶ 21} R.C. 3937.18(F) allows insurers to include an anti-stacking provision in a UIM policy. That provision states in pertinent part:
 {¶ 22} "(F) Any policy of insurance that includes uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages may, without regard to any premiums involved, include terms and conditions that preclude any and all stacking of such coverages, including but not limited to [interfamily and intrafamily stacking]." R.C. 3937.18(F).
 {¶ 23} The parties' automobile insurance policy contains a setoff clause that states in pertinent part:
 {¶ 24} "LIMIT OF LIABILITY *Page 6 
 {¶ 25} "* * *
 {¶ 26} "B. With respect to [UIM] coverage * * * the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible."
 {¶ 27} The parties' policy also contains an anti-stacking provision, which states in pertinent part:
 {¶ 28} "OTHER INSURANCE
 {¶ 29} "If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:
 {¶ 30} "1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis."
 {¶ 31} Initially, appellants concede that pursuant to R.C. 3937.18(C) and the terms of the parties' insurance policy, the policy's $100,000 limit on UIM coverage must be reduced by the $25,000 they received from State Farm on behalf of Centers, the tortfeasor. However, appellants contend that neither R.C. 3937.18(C) nor the setoff provision in the parties' insurance policy requires a setoff of amounts of UIM coverage available to them under another insurance policy such as the one between State Farm and Parker.
 {¶ 32} The first issue we must address is whether the setoff provision in R.C. 3937.18(C) requires that the limits of appellants' UIM coverage be reduced by the UIM coverage available to them under the terms of the policy between State Farm and Parker. In arguing that the setoff provision in R.C. 3937.18(C) so requires, appellee relies on the Eleventh Appellate District's decision in Carpenter v. Western ReserveGroup, Lake App. No. 2002-L-121, 2004-Ohio-1673, which, in turn, relied on the court's previous decision in Kovatch v. Aetna Cas. Sur.Co. (Sept. 24, 1999), Lake App. No. 98-L-095. *Page 7 
 {¶ 33} In Kovatch, the plaintiff-appellant, Kathleen Kovatch, was traveling as a passenger in a vehicle owned and operated by her daughter, Michelle, when Michelle's vehicle collided with a second vehicle operated by Melanie Measel. Measel's negligence caused the accident. As a result of the accident, Kathleen received $25,000 in liability coverage under Measel's (the torteasor's) insurance policy with State Farm Insurance Company, and another $25,000 in UIM coverage under Michelle's insurance policy with Aetna Casualty Surety Company.
 {¶ 34} At the time of the accident, Kathleen had an insurance policy with Progressive Insurance Company that contained a UIM provision with coverage limits of $50,000 per person and $100,000 per accident. Kathleen sought UIM benefits from Progressive despite the fact she had already received $50,000 in total payments as a result of the accident. The trial court found that Kathleen was not entitled to receive UIM benefits under her policy with Progressive. Kathleen appealed.
 {¶ 35} The Kovatch court upheld the trial court, stating in pertinent part:
 {¶ 36} "[Kathleen] contends that the phrase `persons liable to the insured' [in former R.C. 3937.18(A)(2), which is now contained in R.C. 3937.18(C)] refers only to the tortfeasor. From [Kathleen's] perspective, therefore, only the $25,000 from Measel's policy with State Farm should be offset against the limits of her UIM coverage with Progressive. In other words, the $25,000 paid by Aetna should not be offset because Michelle Kovatch was not a person who was `liable' to [Kathleen].
 {¶ 37} "* * *
 {¶ 38} "* * * [W]e disagree with [Kathleen's] interpretation of R.C. 3937.18(A)(2) [now R.C. 3937.18(C)]. The statute manifests a clear intent on the part of the General Assembly to limit the amount of UIM benefits to that which is available under the insured's policy. In this case, [Kathleen's] policy with Progressive contained an express limitation of $50,000 per *Page 8 
person in UIM benefits. It is uncontroverted that [Kathleen] received this amount, to wit: $25,000 from State Farm and $25,000 from Aetna.
 {¶ 39} "The phrase `persons liable to the insured' as used in R.C. 3937.18(A)(2) [now R.C. 3937.18(C)] is broad enough to encompass all persons who are liable to the insured. It does not distinguish between tort and contractual liability. As a result, the category of liable persons can include both those who may be liable in contract, as well as those who may be liable in tort. In other words, the statute mandates that the policy limits of UIM coverage must be reduced by those amounts available for payment under all applicable bodily injury insurance policies, not just the amount of money that was recovered under the torteasor's policy.
 {¶ 40} "In this case, Aetna decided to settle with [Kathleen] for $25,000 after she filed the complaint seeking UIM benefits. As the insurer of the vehicle in which [Kathleen] was injured, Aetna must have recognized its potential contractual liability to [Kathleen] as an insured passenger in the covered automobile. [Footnote omitted.] As a result of such liability, Aetna settled the claim for $25,000. This figure represented the difference between the UIM limit set forth in Kovatch's policy and the amount already paid by State Farm pursuant to Measel's policy.
 {¶ 41} "Under R.C. 3937.18, the trial court correctly ruled that the policy limits of [Kathleen's] UIM coverage had to be offset by those amounts paid under all applicable bodily injury insurance policies, not just the sum of money recovered by [Kathleen] under the tortfeasor's policy." Kovatch, Lake App. No. 98-L-095 at p. 3-4.
 {¶ 42} The Second Appellate District came to the opposite conclusion on this same issue in Wright v. Cincinnati Ins. Co., Montgomery App. No. 19802, 2003-Ohio-4201. In that case, the insurer, The Cincinnati Insurance Company, argued that the phrase "persons liable to the insured" included not only a tortfeasor but also an insurance company providing UIM *Page 9 
coverage. The Wright court rejected this argument, concluding it was "not logical given the language of the statute." The court explained:
 {¶ 43} "Even if we were to construe `persons liable to the insured' to include insurance companies providing underinsured motorist coverage, the statute [former R.C. 3937.18(A)(2), now R.C. 3937.18(C)] requires setoff of amounts available to the insured under insurance policiescovering persons liable to the insured. [Emphasis sic] An insurance company is not covered by a policy, it issues a policy. Therefore, we cannot read the statute to require setoff of amounts available from other underinsured motorist providers." Wright at 20.
 {¶ 44} Wright was subsequently followed by the Fifth District Court of Appeals in Savage v. Encompass Ins. Co., Fairfield App. No. 04CA39,2005-Ohio-248, 25.
 {¶ 45} The trial court, without explanation, found Wright to be unpersuasive. However, we believe the decision in Wright is not without force. R.C. 3937.18 (C) requires that the policy limits of the UIM coverage must be reduced "by those amounts available for payment under all applicable bodily injury liability bonds and insurance policiescovering persons liable to the insured." (Emphasis added.) As theWright court stated, "[a]n insurance company is not covered by a policy, it issues a policy." Wright at 20.
 ¶ 46} By contrast, the Kovatch and Carpenter courts appear to have ignored the word "covering," as used in R.C. 3937.18(C). Both the trial court and appellee have ignored this word as well. It is well-settled that if statutory language is clear and unambiguous, it is the duty of a court to enforce the statute as written, making neither additions nor subtractions to the statutory language. See Hubbard v. Canton CitySchool Bd. of Edn., 97 Ohio St.3d 451, 454, 2002-Ohio-6718; andSpartan Chem. Co., Inc. v. Tracy, 72 Ohio St.3d 200, 202, 1995-Ohio-237.
 {¶ 47} Here, the trial court and appellee have essentially deleted the word "covering" *Page 10 
from R.C. 3937.18(C). The authority appellee relies upon has deleted that word, too. See Carpenter, 2004-Ohio-1673, and Kovatch, Lake App. No. 98-L-095. However, R.C. 3937.18(C) plainly states that the policy limits of UIM coverage must be reduced only "by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.) This language precludes a finding that R.C. 3937.18(C) requires setoff of amounts available from other UIM providers. SeeWright, 2003-Ohio-4201 at 20; Savage, Fairfield App. No. 04CA39, at 25.
 {¶ 48} Nevertheless, our analysis does not end here. As theWright court itself acknowledged, while R.C. 3937.18(C) does not mandate a setoff of amounts available to the insured from other applicable UIM policies, neither does that section prohibit policy language requiring such a setoff. Wright at 23.
 {¶ 49} In this case, the parties' policy contains a setoff provision that states:
 {¶ 50} "B. With respect to [UIM] coverage * * * the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible."
 {¶ 51} The policy at issue in Wright contained a similarly-worded setoff provision that stated, with respect to UIM coverage, "the limit of insurance shall be reduced by all sums paid for `bodily injury' by or on behalf of anyone who is legally liable." After quoting this provision, the Wright court stated:
 {¶ 52} "This paragraph, like R.C. 3937.18(A)(2) [now R.C. 3937.18(C)] requires that, in the case of underinsured motorist coverage, the limits of the Cincinnati [Insurance Company] policy be setoff by the amounts paid pursuant to the tortfeasor's liability policy. It does not, however, provide for setoff of the amounts paid pursuant to underinsured motorist policies. Amounts paid pursuant to an underinsured motorist policy are by definition not paid `by or on behalf of anyone who is legally liable.' An underinsured motorist policy applies when the *Page 11 
amounts paid `by or on behalf of anyone who is legally liable' are insufficient to compensate an insured for his or her loss. While Cincinnati argues that we should interpret this phrase to include an insurance company, we believe that it clearly refers to persons legally liable for the accident." (Emphasis added.) Wright, 2003-Ohio-4201 at 40.
 {¶ 53} We disagree with this part of the opinion in Wright. TheWright court's conclusion that the phrase, "[a]mounts paid pursuant to an underinsured motorist policy are by definition not paid `by or on behalf of anyone who is legally liable'" is based upon its assertion that the phrase "clearly refers to persons legally liable for theaccident." (Emphasis added.)
 {¶ 54} However, just as in the case of statutes, a court may not delete or add words to a contract when determining the parties' rights and obligations under it. DiMarco v. Shay, 154 Ohio App.3d 141, 148,2003-Ohio-4685. As this court has recently stated, "[principles of contract interpretation preclude a court from rewriting the contract by reading into it language or terms that the parties omitted." Fultz Thatcher v. Burrows Group Corp., Warren App. No. CA2005-11-126,2006-Ohio-7041, 30, citing Porter v. Columbus Bd. of Indus.Relations (1996), 111 Ohio App.3d 238, 242.
 {¶ 55} By construing the phrase "anyone who is legally liable" to mean "persons legally liable for the accident," (emphasis added), theWright court was impermissibly adding words to the contract. By adding or deleting words to an unambiguous contract, the Wright court, in effect, rewrote the parties' contract, which it was not permitted to do.Fultz Thatcher; DiMarco.
 {¶ 56} We conclude that the setoff provision in the parties' contract providing that with respect to UIM coverage, "the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible[,]" refers not only to persons or organizations who may be legally responsible for the accident, *Page 12 
but rather, refers to any person or organization "who may be legally responsible[,]" period. Persons or organizations who may be "legally responsible" can include persons or organizations who are contractually liable to the injured party, as well as those who are liable to the injured party as a matter of tort.
 {¶ 57} In this case, the parties stipulated that the accident was caused by Centers. Therefore, Parker and his UIM carrier, State Farm, were not liable to appellants as a matter of tort. Nevertheless, it is apparent from the fifth paragraph of the parties' stipulations that State Farm was contractually liable to appellants as a result of the February 5, 2005 accident. In that stipulation, the parties acknowledge that State Farm paid appellants $75,000 for their claim arising out of the accident. That amount represented the full $100,000 limit of the policy between Parker and State Farm, minus the $25,000 appellants received from Centers, the tortfeasor, as required under the terms of the policy.[3]
 {¶ 58} ] Consequently, the trial court properly found that appellee was entitled under the setoff provision in the parties' policy to reduce the limits of UIM coverage under the policy by the amounts appellants received pursuant to the UIM provision of the policy between State Farm and Parker.
 {¶ 59} ] We also conclude that the anti-stacking clause in the parties' insurance policy requires that the amount appellants received from the UIM coverage in the policy between State Farm and Parker be setoff against the $100,000 UIM limit of the parties' policy. As we have previously indicated, the parties' insurance policy contains an anti-stacking provision that states: *Page 13 
 {¶ 60} "OTHER INSURANCE
 {¶ 61} "If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:
 {¶ 62} "1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis."
 {¶ 63} In this case, by attempting to recover UIM benefits under their policy with appellee on top of and in addition to the UIM benefits they have already received from Parker's policy with State Farm, appellants are attempting to "stack" the UIM coverages provided for by Parker's policy with State Farm and appellants' policy with appellee. SeeKovatch, Lake App. No. 98-L-095 at 8-9. This clearly is prohibited by the anti-stacking provision in the parties' insurance policy. See id.
 {¶ 64} The last issue we need to address under this assignment of error is appellants' claim that this court's decision in Disbennet v.Utica Natl. Ins. Group, Fayette App. No. CA2002-04-009, 2003-Ohio-2013, requires that the $75,000 in UIM coverage they received from Parker's policy with State Farm not be used to reduce the limits of UIM coverage available to them under James J. Merz's policy with appellee. However, appellants' reliance on Disbennet is misplaced.
 {¶ 65} In Disbennet, the policy at issue required a setoff of amounts received by the injured party from any insurance policy "covering persons liable to the insured." Id. at 20. This court concluded that under its plain terms, the plaintiff-appellee's personal UIM policy was not such a policy. The language in the policy at issue in Disbennet largely tracks the setoff language in R.C. 3937.18(C), which, we have already concluded, does not require a setoff of amounts available to the insured from other applicable UIM policies.
 {¶ 66} However, the language in the setoff provision in the policy in this case is *Page 14 
substantially different. Here, the setoff provision in the policy between State Farm and Parker requires that the limit of UIM coverage be reduced by "all sums paid because of bodily injury by on behalf of persons or organizations who may be legally responsible." (Emphasis added.) There is nothing in the language to indicate that the phrase refers only to persons or organizations who may be legally responsiblefor the accident. Instead, the phrase can refer to persons or organizations who may be legally responsible as a matter of tort or as a matter of contract.
 {¶ 67} The $75,000 that State Farm paid to appellants clearly falls within the phrase "all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible." Specifically, State Farm plainly qualifies as an "organization who may be legally responsible" since it is apparent from the parties' stipulations that State Farm was contractually obligated under its policy with Parker to pay appellants $75,000 as a result of the accident. This amount represents the $100,000 UIM coverage limit under the terms of Parker's policy with State Farm, minus the $25,000 appellants already received from the tortfeasor. Thus, under the terms of the setoff provision in the parties' contract, the trial court properly allowed appellee to set off the $75,000 appellants received from Parker's policy with State Farm from the $100,000 limit of UIM coverage available under appellants' policy with appellee. Adding this $75,000 setoff to the $25,000 appellants received from the tortfeasor, reduced appellee's UIM liability limit in this case to zero.
 {¶ 68} Appellants' second assignment of error is overruled.
 {¶ 69} Assignment of Error No. 1.
 {¶ 70} "THE TRIAL COURT ERRED IN CONCLUDING THAT THE ANTI-STACKING LANGUAGE OF APPELLEE'S INSURANCE POLICY WAS CLEAR AND UNAMBIGUOUS."
 {¶ 71} Appellants argue that the trial court erred in finding that the anti-stacking provision of the parties' automobile insurance policy was clear and unambiguous. We *Page 15 
disagree with this argument.
 {¶ 72} An insurance policy is a contract between the insurer and the insured and a court must construe the policy's language as a matter of law. Wilson v. Smith, Summit App. No. 22193, 2005-Ohio-337, 9, citingLeber v. Smith, 70 Ohio St.3d 548, 553, 1994-Ohio-361. A court must examine the insurance contract as a whole and presume that the parties' intent is reflected in the policy's language. Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 219, 2003-Ohio-5849. A court must "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." Id. When the language of a written contract is clear, a court may not look further than the writing itself to determine the parties' intent. Id. "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." Id.
 {¶ 73} "[I]t is well-settled law in Ohio that `[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured.' (Emphasis added.) King v. NationwideIns. Co. (1988), 35 Ohio St.3d 208 * * *, syllabus; see, also, BuckeyeUnion Ins. Co. v. Price (1974), 39 Ohio St.2d 95 * * *. [However, it is] axiomatic that this rule cannot be employed to create ambiguity where there is none. It is only when a provision in a policy is susceptible of more than one reasonable interpretation that an ambiguity exists in which the provision must be resolved in favor of the insured." Hacker v. Dickman, 75 Ohio St.3d 118, 119-120, 1996-Ohio-98.
 {¶ 74} The parties' automobile insurance policy states in pertinent part:
 {¶ 75} "If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy.
 {¶ 76} "1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any *Page 16 
insurance providing coverage on either a primary or excess basis."
 {¶ 77} This policy language is commonly referred to as an "anti-stacking" clause. Up until 1993, such anti-stacking clauses were held to be valid and enforceable in this state. See, e.g., Hower v.Motorists Mutual Ins. Co., 65 Ohio St.3d 442, 447, 1992-Ohio-74.
 {¶ 78} In Savoie v. Grange Mutual Ins. Co., 67 Ohio St.3d 500,1993-Ohio-134, the court held interfamily anti-stacking clauses to be invalid and unenforceable. Id. at paragraph two of the syllabus. However, in 1994, the General Assembly enacted Senate Bill 20. The General Assembly expressly stated in Section 9 of S. B. 20 that in amending division (G) [now division (F)] of R.C. 3937.18, it was the legislature's intent "to permit any motor vehicle insurance policy that includes [UM/UIM] coverage to include terms and conditions to preclude any and all stacking of such coverages, including interfamily and intra-family stacking."
 {¶ 79} As a result of the 1994 legislative changes, appellate courts in this state have returned to Hower for guidance, and have concluded that anti-stacking clauses are valid and enforceable. See, e.g.,Bebout v. Tindall, Franklin App. No. 03AP-1031, 2004-Ohio-3936; andCampo v. Daniel, Cuyahoga App. No. 81419, 2002-Ohio-7257.
 {¶ 80} In this case, appellants argue that the anti-stacking provision in the insurance policy in question is ambiguous and, therefore, should be interpreted in their favor to allow coverage. First, appellants contend that the phrase "other applicable insurance available under one or more policies" is ambiguous because it is capable of multiple interpretations, to wit: (1) the phrase refers only to UM/UIM coverage provisions in other policies issued by appellee; (2) the phrase refers only to UM/UIM coverage provisions in policies issued by insurance companies other than appellee; or (3) the phrase refers to all policies of insurance providing UM/UIM coverage regardless of which insurance company issued the policy. Appellants contend that because the policy's terms are reasonably susceptible to more than one interpretation, the terms must be construed strictly against appellee as the insurer, and *Page 17 
liberally in their favor, as the insureds, to permit coverage. We find this argument unpersuasive.
 {¶ 81} There is nothing in the phrase "other applicable insurance available under one or more policies or provisions of coverage" that suggests the phrase is limited either to policies issued only by appellee, or to policies issued only by insurers other than appellee. The plain and ordinary meaning of this phrase is that it refers to any "other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy," irrespective of the insurer issuing the policy.
 {¶ 82} Appellants also argue that the anti-stacking clause is ambiguous because a court must "go beyond the four corners" of the policy in order to determine its actual meaning since the clause can only be understood and interpreted by reviewing other insurance polices that might provide UM/UIM coverage. They also claim that the "highest applicable limit for any vehicle" language in the anti-stacking clause is ambiguous.
 {¶ 83} However, appellants have not cited any case law that supports their claim that this language renders the anti-stacking provision ambiguous and unenforceable. Indeed, the Ohio Supreme Court rejected a similar argument made with respect to similar anti-stacking language inHower, stating, "[t]here is nothing inherently ambiguous or confusing about the policy language." Hower, 65 Ohio St.3d at 447.
 {¶ 84} Lastly, appellants argue in the alternative that they should at least receive $25,000 from appellee. However, under the plain terms of the policy, the $25,000 appellants received from Centers, the tortfeasor, was required to be set off against the $100,000 per person limit of the policy. Appellants themselves acknowledged this fact in their second assignment of error.
 {¶ 85} Appellants' first assignment of error is overruled. *Page 18 
 {¶ 86} Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] Pursuant to Loc. R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.
[2] Appellants' bad faith claims alleged that appellee (1) failed to investigate appellants' claim for UIM coverage, (2) denied appellants' claim for UIM coverage without reasonable justification, and (3) acted with actual malice and/or fraud in denying appellants' claim.
[3] Like the situation in Kovatch, there is no copy of Parker's automobile insurance policy with State Farm in the record. SeeKovatch, Lake App. No. 98-L-095 at p. 3-4, fn. 1. Nevertheless, given the fact that State Farm paid appellants $75,000, it is apparent that James J. Merz was an insured person under the terms of Parker's policy with State Farm, as James was a passenger in Parker's vehicle at the time of the accident. Thus, James was essentially an intended third-party beneficiary to the insurance policy between Parker and State Farm, see id., which entitled him to bring suit under the contract. SeeGrant Thornton v. Windsor House, Inc. (1991), 57 Ohio St.3d 158, 161 (an intended third-party beneficiary of the contract may bring an action on a contract in Ohio). *Page 1